781 So.2d 881 (2001)
Richard Joseph BLANCHARD and Patricia Stephens Blanchard, Plaintiffs-Appellees,
v.
Charles Lionel RAND, Jr. and Jane Halan Rand, Defendants-Appellants.
No. 34,442-CA.
Court of Appeal of Louisiana, Second Circuit.
March 2, 2001.
*882 Felix J. Bruyninckx, III, Monroe, LA, Malcolm A. Meyer, New Orleans, LA, Counsel for Appellants.
Donald L. Kneipp, Monroe, LA, Sessions & Fishman by Corinne B. Viso, J. David Forsyth, New Orleans, LA, Counsel for Appellees.
Hayes, Harkey, Smith & Cascio by Joseph D. Cascio, Jr., Monroe, LA, Counsel for Intervenors, Clara Moss Sartor and Snellings, Breard, Sartor, Inabnett & Trascher, L.L.P.
Before BROWN, CARAWAY and PEATROSS, JJ.
BROWN, J.
The critical issue presented in this action for a declaratory judgment is whether language in an Exchange Deed created reciprocal predial servitudes prohibiting the resubdivision of a tract into two lots for use as separate building sites. The trial court found that it did not. This appeal followed. For the reasons set forth below, we reverse and remand.

FACTS
Prior to 1989, defendants, Charles and Jane Rand ("the Rands"), owned Lot 16 in Block C, Unit 11 of River Oaks Subdivision ("River Oaks"), located in Monroe, Louisiana. Thomas and Carole Jones, plaintiffs' ancestors in title, owned Lots 15 and 17 in Block C, Unit 11 of River Oaks. All three lots were adjacent to each other and located at the end of a street in a cul-de-sac.
On August 29, 1989, in an exchange deed ("1989 Exchange Deed"), the Rands transferred a portion of Lot 16 to the Joneses. The Joneses, in turn, transferred all of Lot 15 to the Rands. As a result, the Rands owned all of Lot 15 and a portion of Lot 16 and the Joneses owned a portion of Lot 16 and all of Lot 17. This exchange allowed the Joneses, who had two non-adjacent lots, to have one large lot and the Rands, by taking lot 15 and a smaller portion of lot 16, to increase their property.
An exhibit attached to the 1989 Exchange Deed included a metes and bounds *883 legal description of the portion of Lot 16 conveyed to the Joneses. The last paragraph of this description contained the following language:
Herein described tract does not constitute a separate building site, but together with Lot 17 shall be a contiguous and single building site. Likewise, the remaining portion of Lot 16 not contained in herein described tract does not constitute a separate building site, but together with Lot 15 shall be a contiguous and single building site.
On April 29, 1992, the Joneses conveyed their property, all of Lot 17 and a portion of lot 16, to Richard Joseph Blanchard, Jr., and his wife Cynthia ("the Blanchards, Jr.") in a cash sale deed. No reference was made to the single building site limitation contained in the 1989 Exchange Deed.
On July 18, 1997, the Blanchards, Jr., resubdivided their portion of Lot 16 and Lot 17 ("1997 resubdivision"). As a result, two lots were created, hereinafter referred to as Resubdivided Lot 16 and Resubdivided Lot 17. This resubdivision was evidenced by a properly recorded resubdivision plat and was consented to by the original developer, the City Engineer, and the Planning Commission Chairman.
On December 15, 1997, the Blanchards, Jr., conveyed by an exchange deed Resubdivided Lot 16 and Resubdivided Lot 17 to plaintiffs, Mr. Blanchard's father and mother ("Blanchards, Sr.").
The Blanchards, Sr., built a home on Resubdivided Lot 17 and put Resubdivided Lot 16 up for sale. When the Blanchards, Sr., showed Resubdivided Lot 16 to a prospective buyer, the Rands informed the prospect that the language in the 1989 Exchange Deed prohibited the building of a house on Resubdivided Lot 16.
On May 11, 1998, the Blanchards, Sr., filed a petition against the Rands for declaratory judgment that the language in the 1989 Exchange Deed was ambiguous and therefore insufficient to create a predial servitude. The Blanchards, Sr., also filed an action against attorney, Clara Moss Sartor, and her law firm, Snellings, Breard, Sartor, Inabnett & Trascher, for legal malpractice in connection with the 1997 re-subdivision of lots 16 and 17. The attorneys intervened in the present lawsuit. All parties filed motions for summary judgment. The parties attached the authentic acts documenting the history of the lots in question as undisputed facts. The trial court granted the plaintiffs' and intervenors' motions for summary judgment, finding that the language in the 1989 Exchange Deed did not create a servitude and that the 1997 resubdivision did not violate the subdivision's building restrictions. It is from this judgment that defendants have appealed.

DISCUSSION

Creation of Predial Servitude
Defendants, the Rands, argue that the disputed language in the 1989 Exchange Deed created nonapparent, reciprocating predial servitudes.
A predial servitude is a real right burdening an immovable. Its creation requires the existence of two distinct immovables belonging to different owners. Metaphorically, such servitudes are due to an estate rather than the owner of the estate. A predial servitude is a charge on one estate (the servient estate) for the benefit of another estate (the dominant estate). La. C.C. art. 646.
Reciprocal servitudes are provided for in La. C.C. art. 725. As in this case, the title that establishes a servitude for the benefit of the dominant estate may also establish a servitude on the dominant estate for the benefit of the servient estate.
*884 Article 707 of the Civil Code provides, in part, that predial servitudes are either apparent or nonapparent. Nonapparent servitudes are those that have no exterior sign of their existence, such as a negative servitude that imposes on the owner of the servient estate the duty to abstain from doing something on his estate. A nonapparent servitude may only be acquired by title. La. C.C. art. 739.
The intention of the proprietor to create a servitude must clearly appear from the document. McGuffy v. Weil, 240 La. 758, 125 So.2d 154 (1960). Citing McGuffy, the supreme court in Palomeque v. Prudhomme, 664 So.2d 88, 93 (La.11/27/95), stated:
Predial servitudes are in derogation of public policy because they form restraints on the free disposal and use of property. Therefore, servitudes are not entitled to be viewed with favor by the law and can never be sustained by implication. Any doubt as to the existence, extent or manner of exercise of a predial servitude must be resolved in favor of the servient estate. (Citations omitted).
In finding the language in the 1989 Exchange Deed ambiguous, the trial court stated that "although no specific language is required in order to create a predial servitude, the Court feels that the addition of some type of language is necessary to express the desire of the parties to create a restriction on the property, which will pass with the land from vendor to vendee." The trial court concluded that "the location of this language (at the end of a property description in an exhibit), along with the lack of any qualifying language would cast some doubt on whether the parties intended to create a servitude or were giving a further description of the lot in question. This ambiguity raises doubt as to whether a servitude exists."
The disputed language states that the "[h]erein described tract does not constitute a separate building site, but together with Lot 17 shall be a contiguous and single building site" and that "likewise, the remaining portion of Lot 16 ... does not constitute a separate building site, but together with Lot 15 shall be a contiguous and single building site."
This disputed language is consistent with the language in the building restrictions of the River Oaks subdivision. Section 11 of the restrictions provide that "[N]o lot ... shall be divided into a smaller lot and used as a residential site.... [A]ny lot may be integrated with an adjacent lot and the improvements so located as to constitute said entire tract as one-building site ..."[1]
As stated, a nonapparent servitude can only be acquired by title. The title document must clearly reflect the intention of the contracting parties to create an obligation in favor of an estate rather than a person. Mardis v. Brantley, 30,773 (La.App.2d Cir.08/25/98), 717 So.2d 702. Moreover, the servitude may be established by all acts by which immovable property may be transferred. The 1989 Exchange Deed is such a document. The owners, the Rands and Joneses, imposed these real obligations on their properties. A later purchaser may, if the circumstances permit, have recourse against the seller for concealment, but no one can transfer a greater right than he has. McGuffy v. Weil, supra.
The disputed language at issue is not "a further description of the lot in question" *885 but a clear statement of intent to create a real obligation to limit each tract to a "single building site." This was not a personal restriction limiting the vendee's resubdivision of the property without the approval of the vendor, as in Mardis v. Brantley, supra, but a declaration that the tracts conveyed can only be developed as a single building site.
The language at issue in the 1989 Exchange Deed is unambiguous and confers reciprocal real rights. Each estate receives benefits which were already reflected in the existing building restrictions, such as privacy and the economic/aesthetic value of a larger residential home site. Thus, we conclude that predial servitudes were created in the 1989 Exchange Deed prohibiting the development of multiple residential building sites.
In brief, plaintiffs argue that the language is unclear because the phrase "building site" is not defined, arguing that the meaning of a "single dwelling" is ambiguous because it does not state whether detached garages, guest houses, etc. are included. This argument, however, is disingenuous. The language clearly states that the tracts cannot be divided so as to have two residences instead of one. In this case the tracts were clearly resubdivided for the purpose of having two separate residences.
With this finding, we pretermit any discussion of whether the resubdivision of Lot 17 and Lot 16 by the Blanchards, Jr., violated the building restrictions of the River Oaks subdivision.

CONCLUSION
For the reasons set forth above, the judgment of the trial court granting plaintiffs' motion for summary judgment and denying defendants' motion for summary judgment is hereby REVERSED.
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:
(1) The language in the 1989 Exchange Deed establishes a non-apparent servitude binding on the tracts involved; and,
(2) The proposed use and/or sale of the "New Lot 16" by plaintiffs as a separate building site is a violation of the above servitude.
Costs are assessed to plaintiffs-appellees, Richard and Patricia Blanchard.
NOTES
[1] While the building restrictions provide a limited exception to the rule against resubdivision which plaintiffs claim to have met but which is in dispute, we choose to decide the case on the strength of the predial servitude.