914 So.2d 1203 (2005)
ST. ANDREWS PLACE, INC., and Country Club Estates Number One, L.L.C., Plaintiffs-Appellees
v.
CITY OF SHREVEPORT, Defendant-Appellant.
No. 40,260-CA.
Court of Appeal of Louisiana, Second Circuit.
November 4, 2005.
*1205 The Malone Law Firm, by Dannye W. Malone, Shreveport, for Appellant, City of Shreveport.
Blanchard, Walker, O'Quin & Roberts, by John T. Cox, Jr., Shreveport, for Appellant, Southern Trace.
Sinclair Law Firm, L.L.C., by Scott C. Sinclair, Shreveport, for Appellees.
Before GASKINS, PEATROSS and LOLLEY, JJ.
LOLLEY, J.
This appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. The City of Shreveport ("City") and Southern Trace, A Limited Partnership ("Southern Trace") appeal a declaratory judgment in favor of St. Andrews Place, Inc. and Country Club Estates, Number One, L.L.C. ("St. Andrews/Country Club Estates"). For the reasons assigned, the judgment of the lower court is affirmed in part and reversed in part.

FACTS
This action concerns the validity and effect of an asserted public utility servitude (the "Original Servitude"), which was executed by Southern Trace in favor of the City in September 2000. A request for the Original Servitude was made to the City by Charles DeWitt Caruthers, representing Country Club Estates, which was the sole owner of property in Section 30, Township 16 North, Range 13 West, Shreveport, Caddo Parish, Louisiana. This property is located adjacent to and west of property known as the Southern Trace subdivision and lies between the westerly boundary of Southern Trace and Wallace Lake Road. Mr. Caruthers was seeking a servitude at the expense of his development company that would extend public utilities from Southern Trace subdivision to serve the Country Club Estates property.
In response to that request, Mike Strong, Director of Operational Services for the City phoned Johnson Ramsey, an official with Southern Trace, to request servitude rights to the City. Later, Malcom Stadtlander, the administrator of the property management section for the City, also contacted Mr. Ramsey in this regard. Purportedly, he told Mr. Ramsey the City was seeking the use of the Southern Trace water line on the western edge of the Southern Trace property so that the City could build a potable water line loop system on the Southern Trace property. Mr. Ramsey then informed Thomas Darmstadter, who was a partner with Southern Trace at that time. The next day Mr. Darmstadter met with Mr. Stadtlander to further discuss the servitude details. Supposedly, the idea pitched to Southern Trace was that the potable water line would benefit the residents of Southern Trace by improving the water quality and water pressure.
After Mr. Stadtlander received a description of the proposed servitude from Mr. Darmstadter, he gave it to the City Property Management Specialist, William *1206 Talton to prepare a servitude agreement. The record indicates that Mr. Talton used the City's standard utility servitude agreement when preparing the Original Servitude. The Original Servitude now in dispute was not limited to a water servitude, but instead included all public utilities.
Mr. Darmstadter, an experienced real estate businessman, executed the Original Servitude on behalf of Southern Trace. Although the Original Servitude was clearly titled in bold lettering as the "Southern Trace Sewer Extension, Phase I," Mr. Darmstadter testified that he failed to read the document before signing it. The Original Servitude was recorded into the public records of Caddo Parish on September 20, 2000.
In the summer of 2002, Country Club Estates sold a portion of its property to St. Andrews, with an option in favor of St. Andrews with respect to another portion of the property. Subsequent to this, St. Andrews began planning to construct a residential development on the property known as the St. Andrews Subdivision and sent a survey crew to the Southern Trace right-of-way which came to the attention of Mr. Ramsey. Some discussion was had between the survey crew and officials of Southern Trace, who apparently requested that the survey crew leave the property. Allegedly, it was during this time Mr. Ramsey first became aware that St. Andrews/Country Club Estates intended to connect water and sewer lines to the Southern Trace property. Following an inquiry with the City, he discovered that the Original Servitude granted the City the right to tie into all the utilities on Southern Trace property. Mr. Ramsey contacted Mr. Strong several times contending Southern Trace did not agree to a full utility servitude and proposed a change in the Original Servitude.
On July 24, 2003, St. Andrews had a meeting with the City to discuss its development plans. According to a follow-up letter from Mr. Strong to St. Andrews' civil engineer, Jeff Raley, permission was granted to St. Andrews to connect Unit 1 (20 lots) of its subdivision to City sewer facilities by way of extending the facilities in Southern Trace to the St. Andrews property. This letter also granted permission for St. Andrews to connect Unit 1 of its subdivision to City water facilities conditioned upon St. Andrews providing a new water main loop from Southern Trace back to Norris Ferry Road and upon St. Andrews providing a stub-out of the water system to Wallace Lake Road.
Despite the alleged permission granted to St. Andrews, Mayor Keith Hightower executed a Document of Permanent Utility Servitude Cancellation (the "Cancellation Document") on September 2, 2003. Mr. Caruthers testified that the City never discussed changing the Original Servitude to restrict it to a potable water servitude only. Ostensibly, this Cancellation Document served to cancel the Original Servitude. On this same date, Mayor Hightower also executed a revised Permanent Utility Servitude (the "Revised Servitude"), which effected a realignment of the Original Servitude and limited the servitude to a potable water line only.
In light of this development, St. Andrews/Country Club Estates filed this action against the City seeking specific declaratory judgment and additional relief. They contend the net effect of the Cancellation Document and the Revised Servitude was the disposition of the right of the public to use the Original Servitude for sewer facilities (and facilities related to all other public utilities, except water). Subsequently, Southern Trace was made a party to this suit.
*1207 Prior to trial, the parties stipulated that the City did not make any attempt to comply with the provisions of La. R.S. 33:4712 when effecting the cancellation of the Original Servitude. Following a trial in the matter, a declaratory judgment was rendered in favor of St. Andrews/Country Club Estates finding that (1) the Cancellation Instrument did not cancel or otherwise affect the Original Servitude granted by Southern Trace to the City, (2) the Original Servitude was a predial servitude which could only be renounced by St. Andrews/Country Club Estates as owners of the dominant estate; and (3) the Original Servitude remains valid and effective. This appeal ensued by Southern Trace and the City.

DISCUSSION
On appeal, Southern Trace asserts the first assignment of error solely, and, the following three assignments of error in common with the City:
1. The servitude between Southern Trace and the City was tainted by unilateral error, and therefore, there was no meeting of the minds between Southern Trace and City officials, invalidating the servitude between those two parties;
2. The trial court committed legal error in concluding that the Original Servitude created a predial servitude in favor of St. Andrews/Country Club Estates, rather than a personal right of use in favor of the City;
3. The trial court committed legal error when it concluded the City was required to comply with the provisions of La. R.S. 33:4712, prior to renouncing its rights to the Original Servitude; and
4. The trial court committed legal error when it concluded St. Andrews/Country Club Estates were the only entities which could renounce the Original Servitude.

Standard of Review
Generally, a court of appeal may not set aside a trial court's or a jury's findings of fact unless they are manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989), writ denied, 561 So.2d 105 (La.1990). However, the Louisiana Supreme Court has consistently held that where one or more trial court legal error impedes the fact-finding process, the manifest error standard is no longer applicable, and, whenever possible, the appellate court should make its own independent de novo review of the record and render a judgment on the merits. Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.02/20/95), 650 So.2d 742, 747, revd in part, on other grounds, 96-3028 (La.07/01/97), 696 So.2d 569, reh'g denied, 96-3028 (La.09/19/97), 698 So.2d 1388; Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975); see also McLean v. Hunter, 495 So.2d 1298 (La.1986), writ denied, 513 So.2d 1206 (La.1987).
A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. See Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La.1993). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. Id.

Issue of Unilateral Error
First, Southern Trace contends that the Original Servitude confected between itself and the City was tainted by unilateral error, and therefore, there was no meeting of the minds between Southern Trace and City officials. It contends this invalidates the servitude between those two parties.
At trial, Mr. Ramsey testified that he understood that the agreement with the City was only for use of the water line to *1208 loop the water system and that "there was no discussion of anything else." Mr. Stadtlander testified that the reason for the servitude was to put in the water looping system so that the City could have a more efficient water system. Although Southern Trace concedes that the City committed no misrepresentation, it contends that the "confection of the servitude came about as a result of an error which prevented a meeting of the minds between the parties." The crux of their argument is that Southern Trace intended to donate to the City use of only its water line.
The evidence indicates that approximately two years after executing the Original Servitude, officials of Southern Trace learned for the first time that they had "mistakenly" signed a document which donated a full public utility servitude to the City. Mr. Ramsey testified that despite his numerous requests to rectify the mistake, the City at first was unwilling to agree to a change in the Original Servitude.
Mr. Darmstadter testified he gave City officials a proposed description of a limited potable water servitude during negotiations for the servitude in 2000. The evidence discloses that the City officials used a standard public utility servitude when preparing the Original Servitude document. Southern Trace takes the position that this is indicative that there was no meeting of the minds when executing the Original Servitude.
A review of the evidence in whole does not support Southern Trace's argument that the City knew or should have known of the error.[1] We find it persuasive that the document was clearly marked as "Southern Trace Sewer Facility, Phase I" and that Southern Trace does not contend it was misled by the City. Here, logic would dictate that both parties recognized that the Original Servitude included more than a water line. Furthermore, Mr. Darmstadter also received a transmittal letter of the Original Servitude indicating it was in reference to "Southern Trace Sewer Extension." In our view, the fact that Mr. Darmstadter failed to read the document before signing it is not a good defense. It is hornbook law that a person signing a written contract is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that no person explained it to him, or that he did not understand it. Stadlander v. Ryan's Family Steakhouse, Inc., 34,384 (La.App. 2d Cir 04/04/01), 794 So.2d 881; Adams v. Commercial Nat. Bank in Shreveport, 27,360 (La.App. 2d Cir.09/27/95), 661 So.2d 636. Signatures to contracts are not mere ornaments. Shreveport Great Empire Broadcasting, Inc. v. Chicoine, 528 So.2d 633 (La.App. 2d Cir.1988).
In this instance, it is presumed that Mr. Darmstadter would know the contents of the Original Servitude before he signed it and would make sure the intentions of Southern Trace were adequately expressed and included in the agreement. Furthermore, as an astute real estate businessman, it is difficult to understand how a document clearly marked on its face as "Southern Trace Sewer Project, Phase I" would not put even a novice on notice that *1209 the Original Servitude was intended to be more than just a potable water servitude.
Also troublesome is the fact that Mr. Ramsey approached officials of St. Andrews/Country Club Estates in 2003 with a proposition to sign a right to purchase to allow Southern Trace to purchase adjoining acreage at a discounted rate. Apparently, when this offer was refused, the quest to change the original servitude to a potable water servitude only proceeded in earnest. We concur with the trial court's findings that the evidence showed that personnel at the City began impeding St. Andrews'/Country Club Estates' plans to develop their property, while other developers in southeast Shreveport were not faced with the same water and sewer issues. We commend the trial court for its discernment in this regard.
Here, the trial court made a credibility call in its Findings of Fact and Conclusions of Law and determined that there was "no error in the confection of the Original Servitude and that the purported cancellation and the Revised Servitude were not executed to correct any errors in the Original Servitude." We find the record substantiates the trial court's finding that the document remains valid and effective. This assignment lacks merit.

Creation of Predial Servitude
In the next assignment of error, appellants contend the trial court committed legal error when it concluded that a predial servitude existed in favor of St. Andrews/Country Club Estates, rather than a personal right of use in favor of the City. Here, the trial court found that Southern Trace is the servient estate in the Original Servitude and St. Andrews/Country Club Estates is the dominant estate. The trial court held that even though the Original Servitude document did not expressly declare it was for the benefit of St. Andrews/Country Club Estates, it was presumed that it was a predial servitude, because it conferred an advantage on them. The trial court relied upon La. C.C. art. 731, et seq. as supportive of its conclusion.
A predial servitude is a real right burdening an immovable. Its creation requires the existence of two distinct immovables belonging to different owners. Metaphorically, such servitudes are due to an estate rather than the owner of the estate. A predial servitude is a charge on one estate (the servient estate) for the benefit of another estate (the dominant estate). La. C.C. art. 646; Blanchard v. Rand, 34,442 (La.App. 2d Cir.03/02/01), 781 So.2d 881, writ denied, XXXX-XXXX (La.06/01/01), 793 So.2d 194.
There must be a benefit to the dominant estate. The benefit need not exist at the time the servitude is created; a possible convenience or a future advantage suffices to support a servitude. La. C.C. art. 646. There is no predial servitude if the charge imposed cannot be reasonably expected to benefit the dominant estate. La. C.C. art. 647. Comment "c" of art. 647, states that the benefit of the servitude must derive from the servient estate and must be attributed to the person, who, at any given time, happens to be owner of the dominant estate. If the benefit is attributed to a designated person, the servitude is personal rather than predial.
Louisiana C.C. art. 707 provides that predial servitudes are either apparent or nonapparent. Apparent servitudes are those that are perceivable by exterior signs, works, or constructions  such as a roadway, a window in a common wall, or an aqueduct. Nonapparent servitudes are those that have no exterior sign of their existence  such as the prohibition of building on an estate or of building above a particular height. Nonapparent servitudes may be acquired by title only, including a *1210 declaration of destination under Article 741. La. C.C. art. 739.
Predial servitudes are in derogation of public policy because they form restraints on the free disposal and use of property. Therefore, servitudes are not entitled to be viewed with favor by the law and can never be sustained by implication. See Palomeque v. Prudhomme, 95-0725 (La.11/27/95), 664 So.2d 88.
When these elements are unclear or doubtful on the face of the title, a court may not supply them by implication or reform the language used in the title to broaden or restrict the terms of the original agreement. Doubt as to the existence, extent or manner of exercise of a servitude must be resolved in favor of the estate claimed to be burdened by the servitude. La. C.C. art. 730; Mardis v. Brantley, 30,773 (La.App. 2d Cir.08/25/98), 717 So.2d 702, writ denied, 1998-2488 (La.11/20/98), 729 So.2d 563.
In the case sub judice, the trial court applied La. C.C. arts. 731-734 to determine that the Original Servitude placed a charge on one estate (Southern Trace) for the benefit of another estate (St. Andrews/Country Club Estates).[2] We feel the trial court's interpretation of these codal articles was misplaced. Here, the Original Servitude document on its face designates that the benefit is for the City, and it failed to express that it is a charge for the benefit on another estate; it only described a servient estate. See Sustainable Forests, L.L.C. v. Harrison, 37,152 (La. App. 2d Cir.05/22/03), 846 So.2d 1283. Louisiana C.C. art. 732 applies to cases where the act does not express that the charge is to benefit a person. In this instance, the Original Servitude document does express that the charge is to benefit the City. Thus, we find the rules specified in La. C.C. arts. 733 and 734 are not applicable in this case. Further, there is no evidence to indicate Southern Trace and the City intended to make St. Andrews/Country Club Estates as the dominant estate to effect a predial servitude. To the contrary, the document itself is the best evidence, and it declares that the right granted was for the benefit of the City. See Sustainable Forests, supra, where this court found a similar omission to be a critical deficiency. In the absence of a description of a dominant estate in the Original Servitude, we find this conventional right of passage and access in favor of the City falls within the category of personal servitudes, which the Civil Code defines as a "right of use." La. C.C. art. 639, et seq. Therefore, the right of use in this case is not a predial servitude because of the absence of a dominant estate, and the distinction between these separate rights is critical in this case.
We conclude that the trial court misapplied C.C. arts. 731-734 and in doing so, a legal error was made. Hence, that part of the judgment which declared that a predial servitude exists in favor of St. Andrews/Country Club Estates is reversed.

*1211 Compliance with La. R.S. 33:4712

By way of their next assignment of error, appellants aver it was legal error on the trial court's part to find the City was required to comply with the provisions of La. R.S. 33:4712 when renouncing its rights to the Original Servitude. This statute states in pertinent part that:
A. A municipality may sell, lease for a term of up to ninety-nine years, exchange, or otherwise dispose of, to or with other political corporations of this state, or private persons, at public or private sale, any property, or portions thereof, including real property, which is, in the opinion of the governing authority, not needed for public purposes.
B. Except as otherwise provided in this Section, before disposition can be made of property under the provisions of this Subpart, an ordinance must be introduced, giving the reasons for the action on the part of the governing authority, and fixing the minimum price and terms of the sale, lease, exchange, or other contract to be made with reference to the property.... Thereafter, notice of the proposed ordinance must be published three times in fifteen days, one week apart, in a newspaper published in the municipality or, if there is no such newspaper, in a newspaper having a general circulation in the municipality....
C. Any opposition to the proposed ordinance shall be made in writing, filed with the clerk or secretary of the municipality within fifteen days after posting of the above notice or its first publication. If an opposition is filed, the governing authority shall not adopt the ordinance until a hearing has been held. If the ordinance is adopted, it shall not become effective until ten days after its passage, during which time any interested citizen may apply to the district court having jurisdiction of the municipality for an order restraining the disposition of the property. After the ordinance becomes effective, it cannot be contested for any reason.
Further, appellants argue it was inconsistent for the trial court to find the City had no role in the Original Servitude deed, yet required the City to comply with La. R.S. 33:4712. We agree that this posed an inconsistency, but in light of the resolution of the second assignment of error, this argument is moot. Thus, we need only determine if the trial court erred when it concluded that the City was required to comply with La. R.S. 33:4712.
Appellants take the position that La. R.S. 33:4712 does not apply to servitudes because a servitude is not susceptible to "ownership." We note that the City cites Carbo v. City of Slidell, XXXX-XXXX (La. App. 1st Cir.01/08/03), 844 So.2d 1 for the proposition that servitudes in favor of public bodies or governmental entities that specify a limited use less than full ownership are personal rights of use servitudes, not predial servitudes. The Carbo court also states that the personal servitude right of use dismembered the total ownership rights of the owner of the property and it is an incorporeal immovable right subject to ownership. (Emphasis added). We concur with the rationale of Carbo, supra, and, find that in this case, the Original Servitude is a personal right subject to ownership, hence, La. R.S. 33:4712 is applicable.
Moreover, we agree with the trial court's conclusion that if this statute was not applicable to a servitude as appellants argue, it would not include the special provision in subpart B excepting a servitude or right-of-way from advertisement requirements when relating to exchanges for relocations. Here, the Original Servitude *1212 falls within the definition of "any property" in subpart A of the statute.
Appellants also argue that the phrase used in La. R.S. 33:4712 that a municipality "may" sell, signifies that the City's compliance with this statute is discretionary. However, a complete reading of this statute renders no credence to this argument. It is clear that the use of the term "may" only regards to a municipality's option to dispose of property once it determines that the property is no longer needed by the public. The term "may" is clearly qualified by the directive to meet certain requirements in subparts A, B and C of the statute. The clear and unambiguous language of this statute mandates that the City must comply with La. R.S. 33:4712 before disposing of "any property."
As aforesaid, the City already stipulated that it did not comply with La. R.S. 33:4712. Thus, we find the trial court committed no legal error when it determined that the City was required to do so. This assignment is without merit.

Issue of Renouncing the Original Servitude
In their final assignment of error, appellants claim the trial court committed legal error when it found that St. Andrews/Country Club Estates were the only entities which could renounce the Original Servitude. We agree with appellants for the following reasons.
As recognized above, the Original Servitude is not a predial servitude, and, therefore, St. Andrews/Country Club Estates cannot be considered the dominant estate in order to place them in a position to renounce this servitude. As we have deemed this a personal servitude owned by the City, only the City can renounce the Original Servitude and to do so it must comply with the requirements of La. R.S. 33:4712. Hence, we reverse the judgment in so far as it declares that St. Andrews/Country Club Estates were the only entities which could renounce the Original Servitude.

CONCLUSION
We affirm the part of the judgment that states that the Original Servitude remains valid and effective; we reverse the part of the judgment declaring the Original Servitude to be a predial servitude in favor of St. Andrews/Country Club Estates; we affirm the part of the judgment which declares that the City was required to comply with La. R.S. 33:4712; and finally, we reverse the part of the judgment which declares that St. Andrews/Country Club Estates were the only entities which could renounce the Original Servitude. Cost of these proceedings are assessed to both parties equally.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] Reformation of an instrument is an equitable remedy which lies only to correct mistakes or errors in written instruments when such instruments, as written, do not express the true contract of the parties. An instrument may not be reformed or corrected to the prejudice of third parties who are authorized to rely on the integrity of the instrument, or who have relied on public records. See Lewis v. Saucer, 26,685 (La.App. 2d Cir.04/05/95), 653 So.2d 1254. Here, the trial judge found that the Original Servitude did express the true contract of the parties.
[2] La. C.C. art. 731 provides that a charge established on an estate expressly for the benefit of another estate is a predial servitude although it is not so designated.

La. C.C. art. 732 provides that when the act does not declare expressly that the right granted is for the benefit of an estate or for the benefit of a particular person, the nature of the right is determined in accordance with the following rules.
La. C.C. art. 733 provides that when the right granted be of a nature to confer an advantage on an estate, it is presumed to be a predial servitude.
La. C.C. art. 734 provides that when the right granted is merely for the convenience of a person, it is not considered to be a predial servitude, unless it is acquired by a person as owner of an estate for himself, his heirs and assigns.