# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

No. 18-30953

January 30, 2020

Lyle W. Cayce
Clerk

K&F RESTAURANT HOLDINGS, LIMITED, doing business as Izzo's Illegal Burrito; K&F RESTAURANT OPERATIONS, L.L.C.; G&O PIZZA HOLDINGS, LIMITED, doing business as LIT Pizza; G&O RESTAURANT OPERATIONS, L.L.C.; OSVALDO FERNANDEZ; A. GARY KOVACS,

Plaintiffs-Appellants,

v.

DONALD J. ROUSE, JR.; DONALD J. ROUSE, SR.; THOMAS B. ROUSE; ALLISON ROUSE ROYSTER; ROUSE'S ENTERPRISES, L.L.C.,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:16-CV-293

Before WIENER, GRAVES, and OLDHAM, Circuit Judges.

ANDREW S. OLDHAM, Circuit Judge:[*]

The question presented is whether a restrictive covenant in a commercial lease violates the Louisiana Unfair Trade Practices Act ("LUTPA"). The district court dismissed the claim as time-barred. We affirm but for a different reason: Plaintiffs failed to state a claim.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4

No. 18-30953

I.

Plaintiffs are K&F Restaurant Holdings, Ltd., its affiliates, and its owners. They operate several restaurant chains. One is called Izzo's Illegal Burrito.

Defendants own a rival restaurant chain called Rouse's Market. There's bad blood between plaintiffs and defendants. The acrimony evidently arises from a 2012 incident involving a secret recipe book: A former Izzo's employee went to work at Rouse's; he took an Izzo's secret recipe book with him; and he stored the recipe book in the Rouse's kitchen. When Izzo's heard about the stolen recipe book, it obtained a writ of sequestration and had a deputy sheriff rescue the secret recipe book from the competitor's kitchen. Rouse's says it had no idea the book was in its kitchen and never used the recipes. It fired the employee who had brought the book. And it contends it cooperated with Izzo's to reassure it that Rouse's Market was not using any secret recipes. Izzo's threatened litigation, and the parties' counsel had numerous contentious exchanges.

Rouse's Market was embarrassed by the incident. Rouse's says it wanted to "minimize [its] interaction with" Izzo's and its affiliates. So Rouse's negotiated restrictive covenants in three new lease agreements with shopping-center developers. Those restrictive covenants would bar the developers from also leasing to Izzo's or any of K&F's related restaurants. According to Rouse's, its purpose was to prevent another embarrassing recipe-book incident.

Rouse's executed the three lease agreements on June 5, 2013; June 18, 2013; and February 9, 2015. K&F contends it didn't know about the restrictive covenants until "late 2015 and early 2016."

On April 15, 2016, plaintiffs filed suit against Rouse's and its owners in Louisiana state court. Plaintiffs alleged numerous claims arising from the

No. 18-30953

lease provisions, including, as relevant here, a claim that the restrictive covenants violated LUTPA. Their petition also included a claim under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). Defendants timely removed the case to the Middle District of Louisiana under 28 U.S.C. §§ 1331 and 1441.

The district court dismissed K&F's complaint under Federal Rule of Civil Procedure 12(b)(6). As to the only claim relevant to this appeal,[1] the district court held K&F's LUTPA claim was time-barred. The district court held such claims are subject to a one-year peremptive period,[2] and that period started on the date each contract was executed. Therefore, the district court held, K&F's petition was untimely.

## II.

Although the district court resolved this case on timeliness grounds, "[i]t is an elementary proposition, and the supporting cases too numerous to cite, that this court may 'affirm the district court's judgment on any grounds supported by the record.'" *Sobranes Recovery Pool I, LLC v. Todd & Hughes Constr. Corp.*, 509 F.3d 216, 221 (5th Cir. 2007) (quoting *Sojourner T v. Edwards*, 974 F.2d 27, 30 (5th Cir. 1992)). Here, the record supports affirmance

---

[1] K&F's opening brief challenges the district court's dismissal of only its LUTPA claims. Any other argument K&F might have regarding the dismissal of its other claims is therefore forfeited. *See, e.g.*, *Cantú v. Moody*, 933 F.3d 414, 418–19 (5th Cir. 2019).

[2] Louisiana law distinguishes between peremption and prescription. *See, e.g.*, *Pounds v. Schori*, 377 So. 2d 1195, 1198 (La. 1979) ("Our jurisprudence has long recognized a major distinction between a statute of limitations (prescription) and a peremption. It has been repeatedly held that prescription bars the remedy sought to be enforced and terminates the right of access to the courts for enforcement of the existing right. A peremptive statute, however, totally destroys the previously existing right with the result that, upon expiration of the prescribed period, a cause of action or substantive right no longer exists to be enforced."); *compare* LA. CIV. CODE art. 3458 ("Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period."), *with id.* arts. 3445–3457 (Prescription).

on the ground K&F failed to state a claim under LUTPA. We therefore need not consider any other issue.

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." LA. REV. STAT. § 51:1405(A). LUTPA's "narrow goal" is "protecting against egregious actions of fraudulent, deceitful, and unfair business practices to promote and foster healthy and fair business competition." *Quality Envtl. Processes, Inc. v. I.P. Petroleum Co.*, 144 So. 3d 1011, 1026 (La. 2014). The Louisiana Supreme Court has explained:

> Because of the broad sweep of [§ 51:1405's] language, Louisiana courts determine what is a LUTPA violation on a case-by-case basis. . . . [A] plaintiff must show that the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious. [T]he range of prohibited practices under LUTPA is extremely narrow, as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence. Moreover, conduct that offends established public policy and is unethical is not necessarily a violation under LUTPA.

*Id.* at 1025 (citations and quotations omitted; third set of brackets in original); *see also Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1060 (La. 2010) ("[T]he range of prohibited practices under LUTPA is extremely narrow," so "only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA.").

Plaintiffs have not pointed to any "established public policy" prohibiting the restrictive covenants. *Quality Envtl. Processes*, 144 So. 3d at 1025. To the contrary, restrictive covenants limiting use of property by one party's competitors are lawful and not uncommon in Louisiana. *See, e.g.*, *RCC Properties, L.L.C. v. Wenstar Properties, L.P.*, 40,996 (La. App. 2 Cir. 6/5/06),

930 So. 2d 1233, 1235, 1238 (recognizing the validity of a servitude preventing property adjacent to a Wendy's from being used for any other fast-food, burger restaurant). And Rouse's covenants are reasonable by comparison. For example, according to an exhibit to plaintiffs' complaint, one developer offered a space to Izzo's across the street from the shopping center with the restrictive covenant.

It might be true that restrictive covenants generally apply to *all* competitors (e.g., "no burrito restaurants") rather than a specific and named one (e.g., "no Izzo's"). But plaintiffs haven't shown that singling out a certain business—absent an impermissible classification, such as race—is unlawful or against "established" Louisiana public policy. *Quality Envtl. Processes*, 144 So. 3d at 1025. Indeed, Izzo's would have been just as limited in its ability to open restaurants in the affected shopping centers if the restrictive covenants applied to all burrito restaurants. And to the extent LUTPA prohibits anticompetitive conduct, Rouse's narrower covenants have less effect on competition than the broader ones K&F apparently supports. *Cf. Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1331 (5th Cir. 1994) ("The real thrust of the LUTPA . . . is to deter injury to competition.").

AFFIRMED.