PEATROSS, J.
I,This appeal by Plaintiff, Dr. George M. McCormick, II[1], arises from the denial of McCormick’s petition to terminate a servitude that Defendant, Donald Harrison, claimed to exist in his favor. For the reasons stated herein, we affirm.

FACTS

This is a dispute over a servitude of use for a private horse racetrack in Bossier Parish. Harrison owns a two-acre tract in Bossier Parish[2] that he purchased from *800 Danny and Susan Payne. When the Paynes acquired the property in 1993 from Gilbert and Nancy Ciavaglia and Plum Hill Training Center, Inc., the Paynes acquired the following rights:
As additional consideration, Vendor grants to Vendee a non-exclusive servitude of usage of a 5/8 mile horse race track located in the East Half (El/2) of Section 27, T19N, R12W, Bossier Parish, Louisiana, which servitude shall include the right to gallop and exercise at all reasonable times, a maximum of fifteen (15) horses stabled at Vendee’s barn located on the above described track (sic) of land; provided that Vendee shall pay Vendor $100.00 per month maintenance fees for any month that any of Vendee’s horses are exercised on said 5/8 mile track.
The 1995 deed conveying the property from the Paynes to Harrison included this language:
Included in this transfer are all of vendor’s rights under that certain non-exclusive servitude of usage of a 5/8 mile horse track located in the East half (El/2) of Section 27, Township |⅞19 North, Range 12 West, Bossier Parish, Louisiana, as set forth in the Cash Deed from Gilbert A. Ciavaglia et al. to Danny W. Payne et al., recorded under registry number 561809, Conveyance Records of Bossier Parish, Louisiana.
The horse track described in the 1993 and 1995 deeds is located on McCormick’s property, a much larger tract immediately to the northeast of Harrison’s tract. McCormick purchased this tract from Lifeline Nursing Company (“Lifeline”) in September 2004. Lifeline purchased the tract from the Ciavaglias in 1999. Neither the plaintiffs deed nor the deed from the Ciavaglias to Lifeline mentioned the horse track or the servitude.
From the time when Harrison purchased his property in 1995 until 1999 when the Ciavaglias sold the track to Lifeline, Harrison exercised his horses on the track. Harrison paid the Ciavaglias $100 for each month he used the track; the payments were made at irregular intervals. After the Ciavaglias sold the property containing the track to Lifeline, Harrison did not use the track because Lifeline objected to Harrison’s use of the track.
When Lifeline sold the property to McCormick, Harrison decided to use the track. Without contacting McCormick, on October 26, 2004, Harrison’s employee exercised a horse on the track without interference. On October 28, 2004, Harrison’s employee attempted to use the track, but McCormick’s son arrived and asked him to leave. The employee complied, but the next day Harrison’s employee returned to exercise another horse on the track, accompanied by a deputy sheriff. McCormick or his representative again asked Harrison’s employee to leave, and that was the last time Harrison tried to use the track. Harrison did not attempt to pay McCormick $100 for the use of the track at any time; he testified that he |3was asked to leave, not to pay $100. It is not clear from the evidence adduced at trial whether the horse that Harrison trained at the track was stabled at Harrison’s barn.
In December 2004, McCormick filed a rule to show cause in the district court asking for a declaratory judgment to decide the parties’ rights to the track. Specifically, McCormick asked the court for a judgment declaring that the servitude was extinguished. Harrison answered the rule and brought a reconventional demand asking for damages because of McCormick’s refusal to allow Harrison to use the track.
At trial, the parties disagreed about the condition and usefulness of the track. McCormick, who had been a horse trainer *801 for many years, said that the track was unusable and “totally unsafe for horse or rider” because a previous owner of the property had plowed over the track and had brought up subsurface rocks. Harrison, also an experienced horseman, agreed that the track was unsuitable for running horses, but said that the track was “fine for a horse that you’re just breaking or colts to be broke and go on.”
After considering the evidence, the court signed a judgment on September 2, 2005, incorporating reasons for judgment. The court concluded that the servitude held by Harrison was a personal servitude that was still in existence. The court declared that Harrison was entitled to continue to use the track so long as he paid McCormick $100 per month, in advance, for the use of the track. The court also held that Harrison did not owe McCormick for the month of October 2004. Finally, the court denied Harrison’s demand for damages. McCormick took a suspensive appeal.

\ ¿DISCUSSION

The trial court found the servitude established by the Paynes’ deed to be a personal servitude of right of use, and we agree with that characterization. By use of the terms “vendor” and “vendee,” the parties made clear their intent that the servitude ran in favor of persons and not estates. La. C.C. arts. 533, 534, 639; Sustainable Forests, L.L.C. v. Harrison, 37,152 (La.App.2d Cir.5/22/03), 846 So.2d 1283. Limited personal servitudes are real rights that confer on a person limited advantages of use or enjoyment over an immovable belonging to another. Swayze v. State, DOTH, 34,679 (La.App.2d Cir.9/17/01), 793 So.2d 1278, writ denied, 01-3136 (La.2/1/02), 808 So.2d 342, citing Yiannopoulos, 3 Civil Law Treatise § 223 (4th Ed.2000). Such rights are transferable. La. C.C. art. 643.
Right of use servitudes are regulated by the rules governing usufruct and predial servitudes to the extent that these rules are compatible with the servitude of right of use. La. C.C. art. 645. Doubt as to the existence, extent or manner of exercise of a servitude must be resolved in favor of the estate claimed to be burdened by the servitude. La. C.C. art. 730; St. Andrews Place, Inc. v. City of Shreveport, 40,260 (La.App.2d Cir.11/4/05), 914 So.2d 1203; Mardis v. Brantley, 30,773 (La.App.2d Cir.8/25/98), 717 So.2d 702, writ denied, 98-2488 (La.11/20/98), 729 So.2d 563.
A servitude may terminate in several different ways. For example, if that part of the servient estate that is burdened with the servitude is | spermanently and totally destroyed, the servitude is extinguished. La. C.C. art. 751. Although there was some evidence through McCormick’s testimony that the horse track was in an unusable condition, the trial court accepted Harrison’s testimony that the track remained useful for a limited purpose. A servitude may also end due to nonuse for a period of ten years. La. C.C. arts. 752-756. In this case, less than ten years had elapsed since Harrison used the track pri- or to his attempts to use it during McCormick’s ownership.
In brief, McCormick urges that the servitude terminated because Harrison did not pay McCormick $100 for the use of the track in October 2004. Again, the evidence shows that, in October, Harrison used the track one day without interference and thereafter attempted twice to use the track only to be turned away. The evidence does not show that Harrison or his employee offered to pay for the use of the track, nor does the evidence show that McCormick or his representative demanded payment of the $100. The agreement creating the servitude specifies only that “Vendee shall pay Vendor $100.00 per month maintenance fees for any month *802 that any of Vendee’s horses are exercised on said 5/8 mile track.” The agreement does not specify when or where payment is to be made.
We find no support in the civil code for the argument that a right of use servitude terminates[3] upon the failure of the holder of the right to pay an installment. We have considered La. C.C. art. 749, which provides:
Llf the title is silent as to the extent and manner of use of the servitude, the intention of the parties is to be determined in the light of its purpose.
This article, however, is intended to govern the scope of the servitude itself. The manner and place of payment for the servitude or right of use, at least in this instance, are not closely related to the purpose of the right, so the purpose of the right does not provide guidance for resolving this dispute.
Instead, the allowable delay for making the payment may be examined under the law of obligations. La. C.C. art. 1777 provides:
A term for the performance of an obligation may be express or it may be implied by the nature of the contract. Performance of an obligation not subject to a term is due immediately.
La. C.C. art. 1778 provides:
A term for the performance of an obligation is a period of time either certain or uncertain. It is certain when it is fixed. It is uncertain when it is not fixed but is determinable either by the intent of the parties or by the occurrence of a future and certain event. It is also uncertain when it is not determinable, in which case the obligation must be performed within a reasonable time.
Under the terms of the right of use, the holder of the right is entitled to use the track, but must pay the owner for each month when the track is used. We construe the nature of the contract to imply a monthly term for payment; the intent of the parties, as best as may be determined, was that the owner would be paid monthly in those months when the payor used the track. The specific time for payment — in particular, whether payment should be made at the beginning or the end of the month — however, is not determinable.
|7We note that the trial court’s judgment provides that, prospectively, the maintenance fee must be paid in advance of Harrison’s exercise of his use of the track. This portion of the trial court’s ruling was not appealed and, therefore, we will not review this finding. In any event, we conclude that, although Harrison was able to use the track once in October, twice later that month the owner refused to allow him the use of the track. The obligation of the owner of the track was to allow the holder of the right of use to exercise his right without interference. Cf. La. C.C. art. 748. Since McCormick refused to allow Harrison to use the track in accordance with the terms of the right of use, McCormick lost the right to demand that Harrison pay for October because McCormick did not fully perform his obligation. La. C.C. art. 1758(B)(1). Thus, we reject McCormick’s argument that the servitude was extinguished by Harrison’s failure to pay.

CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed at the cost of George M. McCormick, II.
AFFIRMED.

. Dr. McCormick died on September 20, 2005, and his widow, Susan U. McCormick, has been substituted as plaintiff.

. The property description is as follows: A tract of land located in the NE1/4 of the SW1/4 of Section 27, Twp. 19 North, Range 12 West, Bossier Parish, Louisiana further described as follows: Beginning at the Southwest corner of the Northeast Quarter (NE1/4) of the Southwest Quarter (SW1/4) of said section 27, run thence S 88° 03' East along the South line of said NE1/4 a distance of 179.81 feet to the point of beginning of the tract herein described; run thence N Io 42' West a distance of 180.0 feet; run thence N 88° 03' West a distance of 484.0 feet to the point of beginning of tract, together with all buildings and improvements thereon, containing 2.0 acres, more or less.

. This is not to say, however, that an obligee is without a remedy such as injunctive relief or an action for money damages when the obligor/right holder fails to pay.