STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**15-214**


LISA T. SCRANTZ, ET AL.

VERSUS

MARVIN L. SMITH



**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 14-C-3024-A
HONORABLE JAMES PAUL DOHERTY  JR., DISTRICT JUDGE

**********

**JOHN D. SAUNDERS
JUDGE**

**********


Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Marc T. Amy, Judges.



**AFFIRMED.**

**Christopher A. Meeks**
**Attorney at Law**
**341 St. Charles St.**
**Baton Rouge, LA 70802**
**(225) 383-0101**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Lisa T. Scrantz**
    **Joseph C. Scrantz**

**Abbey L. Williams**
**Attorney at Law**
**223 S. Main St.**
**Opelousas, LA 70570**
**(337) 945-8511**
**COUNSEL FOR DEFENDANT/ APPELLEE:**
    **Marvin L. Smith**

**SAUNDERS, Judge.**

This case arises out of a dispute between neighboring property owners over a right of passage. Plaintiffs, Lisa T. Scrantz and Joseph C. Scrantz (hereinafter "Lisa" and "Joseph," individually, and collectively, "Appellants"), appeal the judgment of the trial court in favor of Defendants, Marvin L. Smith and Dorothy Smith (hereinafter "Marvin" and "Dorothy," individually, and collectively, "Appellees"). For the following reasons, we affirm the judgment of the trial court in all respects.

**FACTS AND PROCEDURAL HISTORY**

Emery (hereinafter "Emery") and Hazel Scrantz (hereinafter "Hazel) were divorced in 1989. During their marriage, they owned a large tract of land. In the judgment of partition of community property, the tract was divided into three contiguous tracts; one was approximately twenty acres, another was approximately nineteen acres, and the other was approximately eighty acres. The court allocated the nineteen-acre tract, on which the family home was located, to Hazel. Emery was allocated the twenty-acre and eighty-acre tracts. After partition, the nineteen acre tract allocated to Hazel was situated between the two tracts allocated to Emery. The judgment of partition established "a servitude of passage. . . across the nineteen (19) acres allocated to the wife to provide the husband access to the eighty (80) acres that were allocated to him." The 1991 judgment of partition was recorded in the mortgage and conveyance records on July 2, 1993.

Ownership of the three tracts of land changed after the partition. On July 7, 1993, Emery sold the eighty-acre tract to his brother, Joseph, but retained ownership of the twenty-acre tract. Upon Emery's death on April 3, 2013, his daughter, Tina Scrantz (hereinafter "Tina"), inherited the twenty-acre tract. On December 9, 1994, Hazel sold the nineteen-acre tract to Appellees.

Lisa, who is Joseph's daughter, testified that, on May 16, 2014, she was bushhogging on the twenty-acre tract belonging to Tina, when she was confronted by Marvin. Lisa filed a police report after the incident, in which she reported that Marvin had blocked access to the right-of-way and fired shots at her when she attempted to cross the nineteen-acre tract.

On June 30, 2014, Appellants filed a Petition for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Damages, asserting that the right created in the judgment of partition was a predial servitude and seeking to enjoin Appellees from further interference with the right of passage. Appellees filed an answer on July 11, 2014, asserting the right created in the judgment of partition was a personal servitude. On July 16, 2014, Appellants amended their original petition to include a possessory action, asserting that the property at issue is an apparent predial servitude, subject to acquisitive prescription. Appellants further asserted that they had been in continuous, open, and uninterrupted possession of the servitude since Emery's death. Defendants reconvened seeking an injunction to prohibit plaintiffs' continued use of the servitude.

After trial on the merits, Appellants' possessory action and petition for permanent injunction were denied. The trial court granted Appellees' request for a permanent injunction prohibiting Appellants' use of the servitude. In its oral reasons for denying the possessory action, the court explained:

> In connection with the testimony that the Court has heard, on the possessory action, Civil Code Article 3424 talks about acquisitive possession and that says to acquire possession one must intend to possess as an owner and must take corporeal possession of the thing.
>
> The area in dispute, being the servitude or the alleged servitude, there is no question that there is corporeal possession by Mr. Joseph C. Scrantz and his daughter, Lisa Scrantz; however, there is no evidence that has been presented to me that they actually possessed it as the owner with the intent of owning it. All the testimony was that they had a right and it was a right originally granted by Hazel to Emery and

Joseph C. and Emery ran cattle until Lisa came into the picture; therefore, the Court is denying the petition for possession that's filed herein.

In its written reasons for judgment, the trial court explained:

> [T]he court finds that the servitude granted to Emery Scrantz was a limited personal servitude of right of use. While such a servitude is transferrable, [it] was not transferred in the manner required to bind third parties, including [Appellees].

## ASSIGNMENTS OF ERROR

In their appeal, Appellants assert that the trial court erred in:

1.   requiring Appellants to submit evidence of their intent to possess the servitude as owners; and

2.   in classifying the servitude as a personal servitude instead of a predial servitude.

## STANDARD OF REVIEW

The proper standard of review is whether the trial court committed an error of law or made a factual finding that was manifestly erroneous or clearly wrong. *Gibson v. State*, 99–1730 (La.4/11/00), 758 So.2d 782, *cert. denied*, 531 U.S. 1052, 121 S.Ct. 656, 148 L.Ed.2d 559 (2000). The reviewing court must review the record in its entirety to make this determination. *Stobart v. State, DOTD*, 617 So.2d 880 (La.1993). "Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony." *Id.* at 882. "Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Id.* at 883.

However, statutory interpretations are a question of law. *Shell v. Wal–Mart Stores, Inc.*, 00–997 (La.App. 3 Cir. 3/21/01), 782 So.2d 1155, *writ denied*, 01–1149 (La.6/15/01), 793 So.2d 1244. Although a reviewing court defers to a trial court's reasonable decision on a question or matter properly within the trial court's discretion, if the trial court's decision is based on an erroneous interpretation or application of the law, such an incorrect decision is not entitled to deference. *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La.1983).

*Hijazi v. Dentler*, 13-268, p.5 (La.App. 3 Cir. 11/6/13), 125 So.3d 1280, 1284.

## ASSIGNMENT OF ERROR NUMBER ONE

In their first assignment of error, Appellants note that La.Civ.Code art. 3427 provides that the intent to possess as owner is presumed; thus, the trial court erred in requiring proof of Appellants' intent to possess as owner in resolving the possessory action. We find this assignment of error to lack merit.

In order to succeed in a possessory action, the person alleged to have possession must prove:

> (1) He had possession of the immovable property or real right therein at the time the disturbance occurred;
>
> (2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
>
> (3) The disturbance was one in fact or in law, as defined in Article 3659; and
>
> (4) The possessory action was instituted within a year of the disturbance.

La.Code Civ. P. art. 3658; *Simon v. Charles*, 96-303 (La. App. 3 Cir. 2/19/97), 689 So.2d 716.

"Possession is the detention or enjoyment of a corporeal thing, movable or immovable, that one holds or exercises by himself or by another who keeps or exercises it in his name." La.Civ.Code art. 3421. "To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing." La.Civ.Code art. 3424. Intent to possess as owner is generally presumed. La.Civ.Code art. 3427. However, "[w]hen it **is shown** that the possession was begun for another, the presumption. . . **does not arise.**" *Boudreaux v. Cummings*, 14-1499, p. 3 (La. 5/5/15), 167 So.3d 559, 566, (Knoll, J., dissenting)(quoting La.Civ.Code art. 3427, comment (d)). Instead, the possession is precarious. La.Civ.Code art. 3476, comment (e).

4

Louisiana Civil Code Article 3437 defines precarious possession as "the exercise of possession over a thing with the permission of or on behalf of the owner or possessor." "Acquisitive prescription does not run in favor of a precarious possessor or his universal successor." La.Civ.Code art. 3477. Excluding a co-owner, any precarious possessor or his universal successor may commence to prescribe when he gives actual notice to the person on whose behalf he is possessing that he intends to possess for himself. La.Civ.Code art. 3478.

*Boudreaux*, 167 So.3d at 561.

Express permission is not required to make one's possession precarious; instead, "implied or tacit permission [may be] the basis of precarious possession." *Boudreaux*, 167 So.3d at 562. It is presumed the precarious possessor possesses in the name of the other, even if he intends to possess for himself. La.Civ.Code arts. 3437 and 3438. Thus, to resolve this assignment of error, we must first determine whether Appellants were precarious possessors of the servitude at issue. We find that the record establishes that Appellants were, indeed, precarious possessors.

The record makes clear that the use of the servitude to run cattle was with the permission of Appellees. Marvin testified that he was unaware of the existence of the alleged servitude when he purchased the property from Hazel. He further explained that, after a disagreement with Emery regarding the servitude, the two of them agreed that Emery could use the servitude to run cattle, explaining "I let his cows go to his 20 acres and back and forth to the rest of the land." At some point, Marvin allowed a fence to be erected around the servitude. Marvin further testified that he became aware that Emery sold the eighty-acre tract to Joseph, but testified that Emery was still running cattle, in which he had an ownership interest. Lisa testified that Emery wanted the alleged servitude because "[he and Joseph have] been having cattle for as long as [she] can remember" and that Joseph and Emery "always had cattle together." In his testimony, Joseph acknowledged that he ran cattle on the right-of-way with Emery, explaining that he "worked there every

day." During this time, he explained, he installed a culvert onto the land subject to the servitude and dug ditches to improve the drainage, hauled in a substantial amount of dirt, and made fencing repairs. Although Joseph continued to use the alleged servitude after Emery's death in 2013, any use by Joseph began with the permission of Appellees, as it pertained solely to running the cattle, which was owned, at least in part, by Emery, on the servitude. We find that Appellees' "*simple tolerance*" of Joseph's use as it pertained to running cattle with Emery "cannot be the foundation of either possession or prescription." *Boudreaux*, 167 So.3d at 562 (quoting 4.A.N. Yiannopoulos, Louisiana Civil Law Treatise, Predial Servitudes, § 139, (3d ed. 1997).

Since the record shows that Joseph's possession of the servitude at issue was with the permission of Appellees, the presumption that Joseph intended to possess the servitude as owner did not arise. Instead, it is presumed that Joseph possessed the servitude on behalf of Appellees, even if Joseph may have intended to possess for himself. Thus, to succeed on the possessory action, Joseph must have given actual notice to Appellees that he intended to possess the servitude for himself. Although Joseph continued to use the servitude to run cattle after the death of Emery, we have reviewed the record and find no evidence that he ever gave Appellees any notice that he intended to possess for himself. Considering the foregoing, we find Joseph never terminated his precarious possession. Thus, he could not prove "possession of the immovable property or real right therein" as required by La.Code Civ.P. art. 3658. Accordingly, the trial court did not err in denying Appellants' possessory action.

**ASSIGNMENT OF ERROR NUMBER TWO**

In their second assignment of error, Appellants assert that trial court erred in classifying the servitude at issue as a personal servitude, rather than a predial

servitude.  For the reasons that follow, we find this assignment of error to lack merit.

Servitudes may be personal or may be predial.  La.Civ.Code art. 533.  "A personal servitude is a charge on a thing for the benefit of a person." La.Civ.Code art. 534.  A right of use is a personal servitude. *Id.*  A right of use "confers in favor of a person a specified use of an estate less than full enjoyment."  La.Civ.Code art. 639.  On the other hand, "[a] predial servitude is a charge on a servient estate for the benefit of a dominant estate."  La.Civ.Code art. 646.  "There must be a benefit to the dominant estate. The benefit need not exist at the time the servitude is created; a possible convenience or a future advantage suffices to support a servitude. There is no predial servitude if the charge imposed cannot be reasonably expected to benefit the dominant estate."  La.Civ.Code art. 647. Comment (c) to La.Civ.Code art. 647 elaborates on the requirement of a benefit, explaining:

> The benefit of the servitude must derive from the servient estate and must be attributed to the person who, at any given time, happens to be owner of the dominant estate. 3 Plainol et Ripert, Traité pratique de droit civil français 921 (2d ed. Picard 1952). If the benefit is attributed to a designated person, the servitude is personal rather than predial. For example, a servitude for the benefit of a named owner of an estate for the enjoyment of a swimming pool or of a tennis court in another estate is a personal servitude of right of use, but the same stipulation for the benefit of an estate, or any owner of that estate, gives rise to a predial servitude.

"When the act does not declare expressly that the right granted is for the benefit of an estate or for the benefit of a particular person, the nature of the right is determined" according to the rules of interpretation that specifically apply to documents purportedly creating a servitude, which follow.  La.Civ.Code art. 732.  "When the right granted be of a nature to confer an advantage on an estate, it is presumed to be a predial servitude."  La.Civ.Code art. 733.  However, if the right is granted "merely for the convenience of a person, it is not considered to be a predial

7

servitude, unless it is acquired by a person as owner of an estate for himself, his heirs and assigns." La.Civ.Code. art. 734. "Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate." La.Civ.Code art. 730; *Boudreaux*, 167 So.3d 559. Additionally, "servitudes are restraints on the free disposal and use of property, and are not, on that account, entitled to be viewed with favor by the law." *Boudreaux*, 167 So.3d at 564-65 (quoting *Cont'l Grp., Inc. v. Allison*, 404 So.2d 428, 440 (La.1981)).

The judgment of partition provides, in pertinent part:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that a servitude of passage is hereby granted across the nineteen (19) acres allocated to the wife to provide the husband access to the eighty (80) acres that were allocated to him. This servitude will be located in an area which is least burdensome and inconvenient to the servient estate.

We find the act creating the servitude at issue to be ambiguous; nowhere does it identify whether the servitude is predial or personal. Keeping in mind that any doubt as to the existence of the servitude is to be resolved in favor of the servient estate and that servitudes are not "viewed with favor[,]" we apply the Codal rules for interpreting the act. *Boudreaux*, 167 So.3d at 565.

The judgment creating the servitude indicated that it was created "to provide the husband access to the eighty (80) acres[.]" (emphasis added). It was not granted to "the husband" as owner of the estate, or for "his heirs and assigns." A specific person, "the husband" was identified in the judgment at issue in the instant case. In brief, Appellants assert that the language "to provide . . . access to eighty (80) acres" indicates that the right was granted to him, as the owner of the eighty-acres. We disagree. We find that this is merely a description of the convenience granted to him, which was unique to him. Because the judgment clearly identified a specific person, it was made clear that it was intended that the servitude exist in favor of that identified person and not the estate, which he happened to own at the

8

time.  *See McCormick v. Harrison*, 40,958 (La.App. 2 Cir. 4/12/06), 926 So.2d 798.

Thus, unlike the document creating the servitude in *Burgas v. Stoutz*, 141 So. 67, 69 (La.1932), the document does not "connect[] the servitude with the property as a real advantage to it."  Further, there is no description of a dominant estate in the judgment, something found significant by our brethren in the second circuit.  See *Sustainable Forests, L.L.C. v. Harrison*, 37,152 (La.App. 2 Cir. 5/22/03), 846 So.2d 1283.  However, the judgment mentions the "servient estate."

In light of the foregoing, we find the trial court did not err in concluding the servitude at issue was of a personal nature.

**CONCLUSION**

For the reasons assigned, the judgment of the district court is affirmed. All costs are assessed to Appellants.

**AFFIRMED.**

9