609 So.2d 942 (1992)
ONE RIVER PLACE CONDOMINIUM ASSOCIATION INC., et al.
v.
Paul C. MITCHELL, Jr., Director of Finance of the City of New Orleans, and the City of New Orleans.
ONE RIVER PLACE CONDOMINIUM ASSOCIATION, INC., et al.
v.
LOUISIANA TAX COMMISSION.
Nos. 91-CA-2564, 91-CA-2565.
Court of Appeal of Louisiana, Fourth Circuit.
November 18, 1992.
Writ Denied February 5, 1993.
*943 Gregory D. Guth, Asst. City Atty., Dan Zimmerman, Deputy City Atty., Kathy Lee Torregano, Chief Deputy City Atty., William D. Aaron, Jr., City Atty., New Orleans, and Robert H. Abbott, III, Baton Rouge, for appellant.
Henry O'Connor, Jr., Stephen D. Marx, New Orleans, for appellee.
Before BARRY, PLOTKIN and LANDRIEU, JJ.
PLOTKIN, Judge.
The res nova issue in this appeal is whether the owners of condominium units, who do not own the land beneath their residence, are eligible for the Homestead Tax Exemption provided for in article VII § 20(A) of the Louisiana Constitution.
This case comes before this court on a consolidation of two actions. First, the plaintiff, One River Place Condominium Association,[1] representing the condominium owners of One River Place Condominium, applied to the Tax Assessor of New Orleans for the Homestead Tax Exemption. This application was denied. The plaintiff then appealed to the Louisiana Tax Commission. Before a decision was announced by the Tax Commission the plaintiffs timely filed, in district court, an action for the refund of taxes paid under protest. While the refund action was pending, the Tax Commission rendered its decision denying the appeal for the Homestead Tax Exemption. This decision was appealed to the Civil District Court and was consolidated with the refund action. The trial court held in favor of the plaintiff. The Louisiana Tax Commission and The Director of Finance for the City of New Orleans appeal the decision of the trial court granting the Homestead Tax Exemption. We reverse.

FACTS:
One River Place Condominium Association, Inc. is a non-stock corporation composed of all the owners of condominium parcels in the One River Place Condominium located at the foot of Poydras St. in New Orleans. The condominium tower is constructed near the east bank of the Mississippi River in downtown New Orleans, Louisiana. The land is owned by International River Center from the low water level, past the seawall and the low water *944 mark of the Mississippi River. The land, which is riparian land, is subject to a legal servitude in favor of the public. In Orleans Parish, the legal servitude is administered by the Dock Board for maritime pursuits.
International Rivercenter, due to the fact that it would be impinging upon the legal servitude of the Dock Board,[2] received the Dock Board's consent to develop the land. International Rivercenter constructed improvements on and over the wharf, such as the Riverwalk Shopping Center. Later and with the consent of the Dock Board, International Rivercenter opted to continue to develop the land. International Rivercenter allowed Normandie Company Riverfront Condominium, Inc. to construct a condominium complex on the land. The building, which is owned by Normandie and the individual condominium unit owners, derives it right to be on the land, owned by International Rivercenter, by virtue of a predial servitude granted in favor of the building. The existence of the predial servitude is conditioned upon the annual payment of a fee to International Rivercenter. If the fee is not paid, International Rivercenter becomes the owner of the building.
After completion of the condominiums, Normandie Company sold, and continues to sell, condominium parcels to individual buyers. Each condominium parcel consists of an undivided interest in the condominium property and sole ownership of that owner's unit. The owners of the individual units (condominium owners) applied to the Tax Assessor of New Orleans for the $7,500 Homestead Exemption from ad valorem taxes established in article VII § 20(A) of the Louisiana Constitution. All of the applications were denied. This denial prompted the present suit.
Since they agree that no facts are in dispute, the parties submitted a stipulation of facts and filed for summary judgment. The trial court decided the matter in favor of the condominium owners granting them the Homestead Tax Exemption. Both the Louisiana Tax Commission and the Director of Finance for New Orleans appealed.
The Tax Commission and the Director of Finance argue the following:
1) Tax exemptions must be strictly construed. Therefore, because the condominium owners do not fit under a strict reading of the Homestead Tax Exemption, they are not entitled to the exemption.
2) The condominium owners do not own the land beneath the condominium complex; therefore, they do not own a "tract of land" as is required by the Homestead Tax Exemption.
3) Because tax exemptions must be strictly construed, the trial court was in error when it decided to interpret the Homestead Tax Exemption broadly in order to foster the underlying purpose of furthering home ownership.
BROAD CONSTRUCTION VERSUS STRICT CONSTRUCTION
La. Const. art. VII § 20(A)(1), which governs, provides as follows:
The bona fide homestead, consisting of a tract of land or two or more tracts of land with a residence on one tract and a field, pasture or garden on the other tract or tracts not exceeding one hundred sixty acres, buildings and appurtenances, whether rural or urban, owned and occupied by any person, shall be exempt from state, parish, and special ad valorem taxes to the extent of seven thousand five hundred dollars of the assessed valuation. (emphasis added)
On its face, this provision unquestionably requires that a "tract of land," as well as a residence, be owned and occupied before a homeowner can qualify for the exemption. This provision is designed to foster and promote individual home ownership. In the instant case, the condominium owners, who own and occupy their individual units as their primary residence, may have their condominium qualify as a "residence" for tax purposes. However, the land beneath *945 the condominium complex is owned by International Rivercenter and not the condominium owners. Therefore, a literal reading of the provision would deny them the tax exemption.
In granting the exemption to the condominium owners the trial judge determined that the purpose of the tax exemption would be furthered by giving it a broad reading to encompass the condominium owners even though that interpretation is contrary to the literal language. In her opinion, the trial judge stated that, "[t]he literal reading of the words of the provision would seem to preclude entitlement to the Homestead Exemption by the plaintiffs. However, we must look to the legislative intent in the passage of the provision, in order to gain a broader perspective upon its true meaning." The trial court went on to hold that "[t]he viewpoint that the Homestead Exemption must be based upon ownership of land is antiquated and unworkable in light of the housing demands of today's society."
The trial judge used as authority for this broad reading of the Homestead Tax Exemption opinion 80-337 issued by the Attorney General. In this opinion the Attorney General stated that:
A strict and literal reading of the exact words of Article VII Section 20, would seem to dictate that condominium unit owners are not entitled to the homestead exemption. However, careful analysis of the intent or purpose of Article VII, Section 20, clearly dictates that condominium unit owners should be eligible to receive the benefits of the homestead exemption. (1980 Att'y. Gen. Opin. 337 at 19).
The Attorney General's opinion went on to grant the Homestead Exemption to condominium owners who owned their individual units and owned the underlying property in indivision with the other unit owners.
Noting that the language of the two provisions is nearly identical, the appellees supplement this "broad reading" argument with cases which broadly construe the Homestead Seizure Exemption, found in La.Rev.Stat.Ann. 20:1 (West 1992). However, both the Attorney General's opinion and the cases construing the Seizure Exemption are distinguishable from this case. First, the Attorney General's opinion addresses those condominium owners who also own the land beneath their residences in indivision. Thus, because generally condominium owners own the land underneath, albeit in indivision, the Attorney General opined that they own a "tract of land," thereby qualifying for the exemption. As stated earlier, however, the appellees do not own the land underneath their development, even in indivision; therefore, the Attorney General's opinion does not apply to the instant case.
Second, one could construe the Attorney General's opinion to encourage a broad reading of the Homestead Tax Exemption in order to encourage home ownership as much as possible. Such a reading would be consistent with the Homestead Seizure Exemption cases, which have read the seizure provision broadly in order to protect as many homes from seizure as possible. However, such a reading of the Homestead Tax Exemption provision runs contrary to well-established principle that tax exemptions must be strictly construed. Standard Oil Company of Louisiana v. Fontenot, 198 La. 644, 4 So.2d 634 (1941); State v. Pittsburgh Testing Laboratory Corp., 203 La. 147, 13 So.2d 710 (1943); Meyers v. Flournoy, 209 La. 812, 25 So.2d 601 (1946); State ex rel Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477 (1949); Roberts v. Baton Rouge, 236 La. 521, 108 So.2d 111 (1958); Vulcan Foundry, Inc. v. McNamara, Et Al., 414 So.2d 1193 (La.1982). The Louisiana Supreme Court has consistently applied this rule throughout the years. The Court stated as follows:
an exemption is an exceptional privilege and it must be clearly and unequivocally and affirmatively established, for it is an elementary rule of construction in our jurisprudence that exemptions are strictly construed.
Pearce v. Couvillon, 164 La. 155, 113 So. 801, 803 (1927).

*946 There is no principle of interpretation more firmly and uniformly established by the jurisprudence of this and other States than the unbroken rule that exemptions from taxation are to be strictly construed against the person claiming the exemption and that any plausible doubt is fatal.
State v. Pittsburgh Testing Co., 203 La. 147, 13 So.2d 710, 711 (1943). 2 Cooley on Taxation, 4th Ed., § 672 and Judson on Taxation, 2d Ed., § 93: Mattingly v. Vial, 193 La. 1, 2, 190 So. 313, 315 (1939).
Therefore, because we are dealing with a tax exemption, this court is constrained to follow the long line of jurisprudence construing tax exemptions narrowly. Additionally, the cases that read the seizure exemption broadly are inapplicable because the seizure exemption is not restricted to a narrow reading. The Attorney General's opinion can also be reconciled with the strict construction rule by the fact that the Attorney General found that regular condominium owners own a "tract of land." The tax exemption provision contains no proscription against owning the land in indivision, it only requires that a "tract of land" be owned by the taxpayer.

PREDIAL SERVITUDES
Ownership is comprised of three elements, usus, fructus and abusus. Usus is the right to use the property for any legal purpose. Fructus is the right to enjoy the natural and civil fruits that the property may produce. Abusus is the right to alienate, destroy or otherwise dispose of the property at any time and in any legal manner. These components of ownership may lawfully be dismembered in a variety of ways by the acts of the owner or by operation of law. A predial servitude is one such dismemberment.
Predial servitudes are real rights which, by their nature, affect real property and confer direct and immediate authority over a thing belonging to another person. As article 646 of the Louisiana Civil Code states "[a] predial servitude is a charge on a servient estate for the benefit of a dominant estate." This definition makes it clear that predial servitudes are granted to immovables and not to particular individuals. However, this restriction merely means that anyone who owns the dominant estate may exercise the servitude granted in favor of that estate.
The nature of the "charge" is that it gives the owner of the dominant estate the right to use the servitude in the manner provided for in the servitude agreement. The servitude becomes part of both estates. It cannot exist separately from the estates and it follows the estates from owner to owner. Whenever an estate benefitting or burdened with a servitude is transferred, it is transferred subject to the servitude.
However, as Professor Yiannopoulos points out, "[t]he owner of the dominant estate does not "own" the servitude because it is only corporeal things which may be owned. Nor does he own the part of the servient estate that is burdened with the servitude." Yiannopoulos, 4 Louisiana Civil Law Treatise § 6 (1983). This means that the owner of the dominant estate has no greater interest in the servient estate than is allowed by the servitude agreement or which is granted by law.
We now turn these general principles of law to the present case. It is clear that the condominium owners are not the owners of the land beneath their property. International Rivercenter is the owner of the underlying land. The land is burdened with two separate servitudes; the legal servitude granted in favor of the public, because the land is riparian, and the conventional servitude granted in favor of the condominium building. The legal servitude granted by law to the public is exercised by the Dock Board. However, this servitude is not at issue in the present case. It is sufficient that the Dock Board gave its consent to allow the legal servitude to be impinged upon.
The conventional servitude granted in favor of the condominium building is at the heart of this case. The servitude is granted in favor of the building making it the dominant estate. International Rivercenter's land is burdened with the servitude, *947 therefore, it is servient estate. The condominium owners argue that their position as owners of the dominant estate is sufficient to qualify them for the Homestead Tax Exemption. They first argue the "tract of land" language of the Homestead Exemption can be interpreted to encompass the conventional predial servitude granted in favor of their building. Next they argue that the predial servitude confers rights of ownership in the underlying land.

PREDIAL SERVITUDES AS A "TRACT OF LAND"
To fit within the exemption provision, the condominium owners contend that the predial servitude granted in favor of the condominium complex by the owner of the underlying land, International Rivercenter, fits within the concept of "a tract of land" therefore qualifying the condominium owners for the tax exemption. The condominium owners assert that the "tract of land" language can be read to include their condominium parcels, which include the individual units, as well as the predial servitude in favor of the condominium complex. They argue that because the units and the predial servitude are all "immovables," separately and collectively, they fit within the concept of a tract of land.[3]
Undoubtedly, predial servitudes, as well as condominium units, are immovables. However, even if we were not required to strictly construe the Homestead Tax Exemption provision, we cannot read the "tract of land" language to include predial servitudes within its scope. Initially it must be noted that the Homestead Tax Exemption does not merely require a "residence on land," as the condominium owners argue. It requires that the taxpayer own and occupy both the residence and a "tract of land."
The words "tract of land," are used throughout our civil law.[4] According to the Louisiana Civil Code and Professor Yiannopoulos, whom the appellees cite throughout their brief, a "tract of land" is "a portion of the surface of the earth individualized by boundaries."[5] Thus, clearly a "tract of land" is an identifiable type of immovable rather than a term of art which can be construed to include other immovables. In fact, Professor Yiannopoulos considers a "tract of land" to be the consummate immovable. However, there are several other types of immovables such as buildings, constructions permanently attached to the ground and standing timber when they belong to the owner of the ground. La.Civ.Code Ann. art. 463 (West 1992). Additionally, some movables may be declared to be immovable via article 467 of the Louisiana Civil Code. While all of these separate pieces of property are immovables, none of them could be said to be a "tract of land." Therefore, although a predial servitude is an "incorporeal immovable" under Louisiana Civil Code article 470, its status as an immovable does not bring it within the purview of a "tract of land."
If a predial servitude were to be encompassed within the definition of a "tract of land" simply because it is an immovable, then all immovables would have to be considered part of the "tract of land" definition since all immovables, by their very nature, have some relationship to land. Besides rendering the remaining portion of the Homestead Tax Exemption referring to buildings superfluous, a ruling that equated all immovables to a "tract of land" would run contrary to all of the distinctions drawn between different immovables in the Civil Code. This court is not prepared to make such a departure from our Civilian tradition.

PREDIAL SERVITUDE AS OWNERSHIP
Next, the condominium owners contend that the predial servitude granted in favor of the condominium complex confers "rights of ownership" in the underlying *948 land. Therefore, the condominium owners do own the land underneath, in a fashion, thereby qualifying them for the exemption.
As authority for this proposition the appellees cite Kansas City Southern Railroad Co. v. City of DeRidder, 206 So.2d 562 (La.App. 3rd Cir.1968). In Kansas City, the railroad company was assessed a tax for the improvement of the road which abutted the railroad tracks. The railroad protested, citing the taxing provision which stated that "real property" was to be assessed and claimed that the servitude they used was not "real property" and that the true owner of the land should be assessed. The Third Circuit found it immaterial whether the railroad owned the land or used a predial servitude because the servitude was for such a long duration and deprived the owner of any use of the land that the predial servitude was the equivalent of fee ownership. Additionally, the court noted that the true owner would not benefit from the improvements to the road, whereas the railroad company might. Therefore, the appellees contend that since the predial servitude in this case is as permanent as the predial servitude in Kansas City, it should also considered as giving the user of the predial servitude "fee ownership" of the actual land.
While this is an interesting argument, it too must fail. First, Kansas City dealt with a tax assessment, not a tax exemption. Tax assessments are not restricted by the strict construction rule as are tax exemptions; thus a broader reading of the language of the assessment may be permitted. Additionally, Kansas City is of dubious precedential value and should be considered as an anomaly in the law. Professor Yiannopoulos recognized this when he cited Kansas City as "being contrary to principles of the Civil Code and as involving unwarranted judicial law making."[6] Additionally this court in Roman Catholic Church v. City of New Orleans, 280 So.2d 384, 387 (La.App. 4th Cir.1973), while acknowledging the rationale of Kansas City, properly held that the landowner and not the servitude holder was responsible for the tax assessment.
This criticism stems from the nature of a predial servitude. A predial servitude is a charge upon a servient estate for the benefit of a dominant estate. La.Civ.Code Ann. art. 646 (West 1992). This charge is defined by either the law, as in the case of natural or legal servitudes, or by contract, as in the case of conventional servitudes. However, beyond the rights specifically granted by the servitude itself, the owner of the dominant estate has no other rights in the servient estate. Professor Yiannopoulos stated as follows:
Article 658 of the Louisiana Civil Code of 1870 declared: "The part of an estate upon which a servitude is exercised, does not cease to belong to the owner of the estate; he who has the servitude has no right of ownership in the part, but only the right of using it." This provision has not been reproduced in the 1977 legislation because it is self evident.
Yiannopoulos, 4 Louisiana Civil Law Treatise § 6.
Clearly, the dominant estate owner may not alienate the land on which the servitude is granted nor may he collect the fruits of the ground on which the servitude is granted. The owner of the servient estate is bound to allow the dominant estate to exercise the servitude. However, this does not mean that all uses of the land are forsaken for the servitude. As long as the activity does not infringe upon the servitude, the owner of the underlying land may put the land to any use he sees fit. He may also alienate the land, subject of course to the servitude. If any fruits accrue from the land burdened with the servitude they belong to the landowner and not to the owner of the dominant estate. Unquestionably, therefore, the existence of a predial servitude does not confer any semblance of ownership of the land burdened with the servitude upon the owner of the dominant estate. Thus, the predial servitude in favor of the condominium complex is insufficient to give the condominium owners rights of ownership in the "tract of *949 land" underneath the complex so that they may qualify for the Homestead Exemption.
Therefore, because a predial servitude cannot be considered a "tract of land" simply because it is an immovable and a predial servitude is insufficient to confer rights of ownership in the dominant estate, the condominium owners do not "own a tract of land." Without ownership of a "tract of land," the condominium owners do not qualify for the Homestead Tax Exemption under a strict reading, as is required, of the Louisiana Constitution Article VII, Section 20(A).

A PREDIAL SERVITUDE AS A LEASE
Both parties and the trial court raise the issue of whether this particular predial servitude is in fact a lease. For support of this contention the Tax Commission points to the fact that an annual fee is owed in order to maintain the predial servitude, therefore in reality the condominium owners are actually leasing the land. The Tax Commission asserts this position because it would bring this case under this court's holding in Schulingkamp v. Heaton, 455 So.2d. 1181 (La.App. 4th Cir.1984). In Schulingkamp, this court denied the Homestead Tax Exemption to a boat house owner who leased the underlying land from the City of New Orleans.
Although an annual fee is required, the agreement reached in this case is not a lease. First, a lease is a personal right granted to a particular tenant. La.Civ. Code Ann. art. 2669 (West 1992). Here the servitude is granted in favor of the condominium building and not in favor of a particular person. Second, a lease must have a term whereas a servitude does not. La. Civ.Code Ann. art. 2674 (West 1992). No term is stated in the act of servitude. Additionally, the fact that a fee is required does not affect the nature of the agreement. There is no prohibition against the owner of the servient estate requiring a fee from the dominant estate in order to exercise the servitude granted in favor of the dominant estate. Therefore, because the agreement in this case is not a lease, our decision in Schulingkamp is inapplicable.
However, the fact that a fee is required for the exercise of the predial servitude clearly shows that the condominium owners have no ownership interest in the underlying land. If the condominium owners had some form of ownership in the underlying land then a fee could not be required of them.

CONCLUSION
It must be stressed by this court that the situation before us is a unique one. Our research reveals no other cases where a condominium development was in a similar position. Normally condominiums are built upon land that is owned by the condominium owners in indivision thus allowing a Homestead Exemption. Here, due to the nature and location of the land, ownership by the condominium owners was impossible.
It also must be stressed that this court does not address nor is it disapproving of the manner of home ownership that condominiums now provide to individuals. However, where the condominium owners have no ownership interest in the underlying land, a constitutional provision which requires such ownership should not be disturbed simply to meet this anomalous situation. Additionally, this court is unprepared to alter countless years of civilian law to encompass the plaintiff's concept of ownership with regards to a predial servitude.
Therefore, the decision of the trial court, granting the appellees the Homestead Tax Exemption provided by Louisiana Constitution Article VII, Section 20(A) is reversed. All costs are assessed against the appellees.
NOTES
[1] One River Place Condominium Association brought two suits, which were consolidated, as agent for eleven individual condominium owners of One River Place Condominiums.
[2] See La.Civ.Code Ann. arts. 720, 729 (West 1992); La.Rev.Stat.Ann. § 9:1102.2 (West 1992).
[3] See La.Civ.Code Ann. arts. 470, 649 (West 1992); see also the Louisiana Condominium Act La.Rev.Stat. 9:1121.101 (West 1991).
[4] See La.Civ.Code Ann. arts. 462, 463, 465, 490 (West 1992); La.Rev.Stat. 20:1 (West 1992).
[5] Yiannopoulos, Treatise on The Civil Law Vol. 1 § 114; see also La.Civ.Code Ann. art. 462 official revision comment C (West 1992).
[6] Yiannopoulos, 4 Louisiana Civil Law Treatise & sect; 6 n. 3 (1983); see also 30 La.L.Rev. 191 (1969).