| | | |
|---|---|---|
| **1026 CONTI CONDOMINIUMS, LLC** | * | **NO. 2019-CA-0826** |
| | * | |
| **VERSUS** | * | **COURT OF APPEAL** |
| | * | |
| **1025 BIENVILLE, LLC** | * | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

**CONSOLIDATED WITH:**

**1026 CONTI CONDOMINIUMS, LLC**

**VERSUS**

**1025 BIENVILLE, LLC**

**CONSOLIDATED WITH:**

**1025 BIENVILLE, LLC**

**VERSUS**

**BRUNO PROPERTIES, LLC**

**CONSOLIDATED WITH:**

**NO. 2019-CA-0827**

**CONSOLIDATED WITH:**

**NO. 2019-CA-0828**

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2009-13363, DIVISION "M"
Honorable Paulette R. Irons, Judge
\* \* \* \* \* \*
**Judge Tiffany G. Chase**
\* \* \* \* \* \*
(Court composed of Judge Daniel L. Dysart, Judge Rosemary Ledet, Judge Tiffany G. Chase)

Fred L. Herman
Matthew A. Sherman
Jacob D. Young
Nicholas R. Varisco
CHEHARDY SHERMAN WILLIAMS MURRAY RECILE STAKELUM & HAYES, LLP
One Galleria Blvd., Suite 1100
Metairie, LA 70001

Raymond B. Landry
MOLLERE FLANAGAN & LANDRY, L.L.C.
2341 Metairie Road
Metairie, LA 70001

Leonard L. Levenson
LEONARD L. LEVENSON & ASSOCIATES
650 Poydras Street, Suite 2750
New Orleans, LA 70130

COUNSEL FOR PLAINTIFFS/APPELLANTS

Galen S. Brown
SULLIVAN STOLIER SCHULZE LLC
909 Poydras Street, Suite 2600
New Orleans, LA 70112

Joseph M. Bruno
BRUNO & BRUNO LLP
855 Baronne Street
New Orleans, LA 70113

COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**AUGUST 5, 2020**

*TGC*
*DLD*
*RML*

This is the third appeal in a dispute between two French Quarter landowners involving a servitude. 1026 Conti Condominiums, LLC (hereinafter "Conti") appeals the trial court's judgment recognizing 1025 Bienville, LLC's (hereinafter "Bienville") designation of the location of the servitude. 1026 Conti Holding, LLC (hereinafter "Conti Holding") appeals the trial court's judgment denying its motion for leave to file a petition for intervention. After consideration of the record before this Court and the applicable law, we affirm the judgments of the trial court.

## FACTS AND PROCEDURAL HISTORY

In 2006, Conti purchased property located at 1026 Conti Street from Bruno Properties, LLC (hereinafter "Bruno"). The property, referred to as Lot 3 in the act of sale, included a building containing seven condominium units. Adjacent to Lot 3, on its west side, is an alley leading to a land-locked courtyard located directly behind Lot 3 and another adjacent property. The property description in the act of sale provided "the right to use said alley as well as of a 'court[yard]' figured on said plan and common to Lots 1, 2, and 3 and other property." Bruno later sold other properties in the same block, including properties bordering the

1

aforementioned alley and courtyard. Bruno also sold Lot AA, which encompasses most of the courtyard, to Bienville. Thus, in the servitude at issue, Lot AA is the servient estate and Lot 3, 1026 Conti Street, is the dominant estate.

Initially, both Conti and Bienville shared the use of Lot AA for approximately three years during construction. This practice ended in 2009, when Bienville striped Lot AA for parking and posted signage asserting exclusive use of Lot AA such that any unauthorized vehicles would be towed. On December 23, 2009, Conti filed a preliminary injunction and a request for a declaratory judgment against Bienville regarding Conti's right to use Lot AA. Conti subsequently filed a motion for summary judgment "seeking a declaration as to the existence, extent and type" of servitude granted in the sale between itself and Bruno. On May 13, 2011, the trial court granted Conti's motion for summary judgment and declared that a predial servitude of "access, passage, and parking for the benefit of the Dominant Estate [Conti's property]" existed.

Bienville appealed, and this Court reversed. *1026 Conti Condominiums, LLC v. 1025 Bienville, LLC*, 2011-1055, p. 12 (La.App. 4 Cir. 2/8/12), 84 So.3d 778, 785 (hereinafter "*Conti I*"). While this Court agreed with the trial court's finding that a servitude existed, we found there remained a genuine issue of material fact as to the scope of the servitude granted to Conti. *Id*. We opined that genuine issue of material fact existed as to whether the servitude included the right to park on Lot AA (the courtyard), or on any portion of it, and "whether the use the parties made of the alley and courtyard from 2006 until 2009 … should be considered typical and therefore determinative of the parties' intent with regard to the scope of the servitude." *Id*.; *see also* La. C.C. art. 749. The matter was remanded to the trial court for a trial on the merits. *Id*.

2

Following a bench trial, the trial court rendered judgment on October 8, 2014, this time ruling that a predial servitude existed for access and passage only – parking was not included. Both parties filed motions for new trial. Conti's motion was denied; however, Bienville's motion, requesting greater specificity as to the description of the properties, was granted. On December 18, 2014, the trial court issued an amended judgment which, in relevant part: 1) recognized the existence of "a predial servitude for access and passage only over and across" Lot AA; 2) denied Conti the right of parking on Lot AA; and 3) assessed costs against Conti (hereinafter "the 2014 Amended Judgment").

Conti appealed arguing the trial court erred by denying its right to park, by improperly relying on La. C.C. art. 750,[1] and by granting Bienville the right to designate the location of the servitude. This Court affirmed the trial court's ruling which denied Conti the servitude of parking on Lot AA. *1026 Conti Condominiums, LLC v. 1025 Bienville, LLC*, 2015-0301, pp. 9-10 (La.App. 4 Cir. 12/23/15), 183 So.3d 724, 730 (hereinafter "*Conti II*"). However, we declined to address the trial court's application of La. C.C. art. 750.[2] *Id.*, 2015-0301, p. 10,

---

[1] La. C.C. art. 750 provides: "If the title does not specific the location of the servitude, the owner of the servient estate shall designate the location."

[2] In *Conti II*, 2015-0301, p. 10, 183 So.3d at 730, Conti argued that the trial court erred in holding that Bienville could designate the location of the servitude, thereby restricting its extent and size under La. C.C. art. 750. As the 2014 Judgment was silent as to Bienville's right to designate the location of the servitude, we declined to address this argument:

> As Conti admits, the Reasons for Judgment of the district court are distinct from the judgment itself. It is well-established that "Reasons for Judgment" are not controlling and do not constitute the "Judgment" of the court. *Kaufman v. Adrian's Tree Service, Inc.*, 00–2381, p. 3 (La.App. 4 Cir. 10/31/01), 800 So.2d 1102, 1104. *See also Theresa Seafood, Inc. v. Berthelot*, 09–0814, p. 7 (La.App. 4 Cir. 3/10/10), 40 So.3d 132, 137, *amended on reh'g* (May 12, 2010) [wherein we held that suggestions made by the trial court in its reasons for judgment are not controlling.]. Moreover, "[a]ppeals are taken from the judgment, not the written reasons for judgment." *Greater New Orleans Expressway Com'n v. Olivier*, 02–2795, p. 3 (La.11/18/03), 860 So.2d 22, 24.

3

183 So.3d at 750. Conti sought further review with the Louisiana Supreme Court. Writs were denied.[3]

On February 12, 2016, Conti Holding, a separate entity owned by the same principal as Conti, filed a separate suit against Bienville alleging ownership of Lot AA.[4]

On March 17, 2016, after exhausting appellate review, Conti filed a motion to enforce the 2014 Amended Judgment arguing that Bienville's attempt to designate the location of the servitude diminished or made inconvenient Conti's use of the servitude. Specifically, Conti alleged there was insufficient space for its tenants to turn around in Lot AA. Bienville responded by filing a "Motion for Court Approval of Designation of Location of Servitude Area (hereinafter "Motion to Designate Location of Servitude Area"), requesting the trial court approve Bienville's proposed location of the servitude – a 26'6" x 9'3" portion of Lot AA – pursuant to its rights under La. C.C. art. 750. Conti subsequently withdrew its motion to enforce the judgment and filed an opposition to Bienville's Motion to Designate Location of Servitude Area. On December 30, 2016, Conti Holding filed a motion for leave of court to file a petition for intervention in the matter *sub judice*.

At the trial on Bienville's Motion to Designate Location of Servitude Area, each party presented testimony from an expert witness submitting its theories as to the location of the servitude area. Bienville's owner also testified. The trial court took the matter under advisement after which the parties jointly moved to offer

---

[3] *1026 Conti Condominiums, LLC v. 1025 Bienville, LLC*, 2016-0144 (La. 3/14/16), 189 So.3d 1067.

[4] *1026 Conti Holding, LLC v. 1025 Bienville, LLC*, Orleans Parish Civil District Court No. 2016-1438.

4

further deposition testimony from Bienville's expert pertaining to photographs entered into evidence. The parties also agreed to submit Conti Holding's motion for leave to file a petition for intervention for a decision on the briefs.

On June 27, 2019, the trial court issued two separate judgments. The first judgment granted Bienville's Motion to Designate Location of Servitude Area which also contained a site diagram displaying the exact location of the servitude. The judgment further awarded all costs incurred by Bienville in bringing the motion due to Conti's refusal to work cooperatively with Bienville in the administration of the servitude. In the second judgment, the trial court denied Conti Holding's motion for leave to file petition for intervention as untimely and for lack of a justiciable interest in the action. This appeal followed.

## STANDARD OF REVIEW

Appellate courts review findings of fact pertaining to servitudes under the manifest error standard of review. *Conti II*, 2015-0301, p. 4, 183 So.3d at 727 (citing *Allen v. Cotten*, 2011-1354, p. 3 (La.App. 3 Cir. 5/2/12), 93 So.3d 681, 683). "An appellate court may not set aside a trial court's findings of fact unless they are manifestly erroneous or clearly wrong." *Id.* (citing *Rosell v. ESCO*, 549 So.2d 840 (La. 1989)). "To reverse under the manifest error rule, an appellate court must find from the record that there is no reasonable basis for the trial court's finding and that the record shows the finding to be manifestly erroneous." *Id.* (citing *Stobart v. State, Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993)).

## DISCUSSION

Conti and Conti Holding's assignments of error coalesce into two main arguments. First, Conti argues the trial court erred in granting Bienville's Motion to Designate Location of Servitude Area. Second, Conti Holding maintains the

5

trial court erred in denying Conti Holding's motion for leave to file a petition for intervention.

## PREDIAL SERVITUDES

In the Louisiana Civil Code of 1870, servitudes are divided into personal and predial. A.N. Yiannopoulos, *Predial Servitudes; General Principles: Louisiana and Comparative Law*, 29 LA. L. REV. 1, 2 (1968). A predial servitude is a charge on a servient estate for the benefit of a dominant estate and the two estates must belong to different owners. La. C.C. art. 646. "In the civilian literature, the estate burdened with a predial servitude is designated as 'servient' (*praedium serviens*); the estate in whose favor (or in whose owner's favor) the servitude is established is designated as 'dominant' (*praedium dominans*)." Yiannopoulos, *supra*, at 5. Pursuant to La. C.C. art. 647, there must be a benefit to the dominant estate and there is no predial servitude if the charge imposed cannot be reasonably expected to benefit the dominant estate. The owner of the servient estate is not required to do anything. His obligation is to abstain from doing something on his estate or to permit something to be done on it. La. C.C. art. 651.

The establishment of a predial servitude may be by an owner on his estate or acquired for its benefit. Our Civil Code provides that the use and extent of such servitudes are regulated by the title by which they are created. La. C.C. art. 697. However, in the absence of such regulation, they are governed by the rules set forth in La. C.C. arts. 698 through 774. *See* La. C.C. art. 697. "Predial servitudes involving toleration of certain activities on the servient estate may be for the use of that estate for certain purposes, for example, in connection with rights of way." Yiannopoulos, *supra*, at 7. Comment (b) to La. C.C. art. 697 provides greater insight into the public policy considerations of such burdens:

> Owners have the right to establish on their estate, or to acquire for the benefit of their estate, such predial servitudes as they deem proper. This freedom, however, is tempered by the rules of public policy enacted in the general interest. C.C. art. 11. Apart from general limitations, the creation of predial servitudes by juridical act is subject to special rules that are largely insusceptible of modification by agreement. These rules, limiting contractual and testamentary freedom, are designed to effect a balance between individual demands for the recognition of modification of property rights to suit individual needs and social demands for the preservation of a relatively simple system of unencumbered property. *See* Yiannopoulos, *Real Rights: Limits of Contractual and Testamentary Freedom*, 30 LA. L. REV. 44 (1969).

Since predial servitudes form restraints on the free disposal and use of property, predial servitudes are in derogation of public policy and are not entitled to be viewed with favor by the law and can never be sustained by implication. *Palomeque v. Prudhomme*, 1995-0725, p. 7 (La. 11/27/95), 664 So.2d 88, 93. Thus, "[d]oubt as to the existence, extent or manner of exercise of a servitude must be resolved in favor of the estate claimed to be burdened by the servitude." *St. Andrews Place, Inc. v, City of Shreveport*, 40,260, p. 11 (La.App. 2 Cir. 11/4/05), 914 So.2d 1203, 1210; La. C.C. art. 730. In creating a servitude, the parties may limit the extent and mode of using a servitude of passage. *Sanders v. Plaquemines Cable TV, Inc.*, 407 So.2d 524, 526 (La.App. 4th Cir. 1981) (citation omitted). Nonetheless, "the existence of a predial servitude does not confer any semblance of ownership of the land burdened with the servitude upon the owner of the dominant estate." *One River Place Condominium Ass'n Inc. v. Mitchell*, 609 So.2d 942, 948 (La.App. 4th Cir. 1992). Thus, courts must consider the above principles in determining the location and servitude area when the act of sale is silent.

Conti's primary argument is that the trial court erred in designating the location of the servitude area to the limited area set forth in the June 27, 2019 judgment. Conti also submits that the trial court erred in issuing a ruling that contradicts its prior May 11, 2011 judgment which permitted use over the "entirety" of Lot AA.[5] We find no merit to these arguments.

Conti's procedural argument is that the trial court's ruling was in contravention of La. C.C.P. art. 1951, the law of the case doctrine or *res judicata*. In *Conti I*, this Court was tasked with determining whether the trial court's ruling granting summary judgment as to the existence, extent, and type of servitude was appropriate. While we agreed with the trial court's recognition of the existence of a servitude, we reversed the trial court's granting of summary judgment, finding there remain genuine issues of material fact as to "the scope of the servitude granted to Conti." *Conti I*, 2011-1055, p. 12, 84 So.3d at 785. Specifically, we questioned whether the servitude includes the right to park on Lot AA (the courtyard) or on any portion of it. *Id.* Our disposition in *Conti I* resulted in the case being remanded for a trial on the merits to resolve the factual issues. *Id.* "Generally, 'the effect of a general and unqualified reversal of a judgment, order, or decree is to nullify it completely and to leave the case standing as if such judgment, order, or decree had never been rendered, except as restricted by the opinion of the appellate court.'" *O'Brien v. O'Brien*, 347 So.2d 1288, 1289-90 (La.App. 1st Cir. 1977) (quoting 58 C.J.S. Appeal and Errors 1950). Thus, the 2011 judgment rendered by the trial court was extinguished by our decision in

---

[5] Conti argues that the trial court committed legal error when issuing the June 27, 2019 judgment contrary to the principles of *res judicata*, law of the case, and La. C.C.P. art. 1951's prohibition against substantive amendments to final judgment.

*Conti I.* Conti's argument that the designation of the servitude by the trial court in the June 27, 2019 judgment is *res judicata* is without merit.

Now we turn to Conti's primary argument that the trial court erred in designating the location of the servitude to a limited area proposed by Bienville. The evolution of this case is germane to our review of whether the trial court was manifestly erroneous in its determinations. We note that the same trial judge has presided over this case since 2009 and has had the benefit of two appellate court opinions from this Court. Contrary to the assertions of Conti, this is the first instance whereby the trial court held a trial, considered testimony and evidence, and delineated the location of the servitude area on Lot AA.

In *Conti II*, we examined the 2014 Amended Judgment that provided for "a predial servitude for access and passage only over and across" the servient estate, Lot AA. In analyzing the trial court's judgment, we determined that the "district court considered three possible types of use for the servitude at issue: access, passage and parking." *Conti II*, 2015-0301, p. 7, 183 So.3d at 729. The trial court rejected Conti's request for parking and described, in detail, the dimensions of both the servient and dominant estates. We affirmed. On appeal in the case *sub judice*, Conti suggests that the language of the 2014 Amended Judgment extends the servitude over the entirety of Lot AA. Our examination of the judgment does not reveal that the word "entirety" appears anywhere in the 2014 Amended Judgment. Nonetheless, it is undisputed there was no designation of the location and extent of the servitude in the act of sale transferring the dominant estate to Conti; thus Bienville properly exercised its rights under La. C.C. art. 750 by filing the Motion to Designate Location of Servitude Area.

9

Louisiana Civil Code art. 697 provides that the use and extent of predial servitudes, when not regulated by title, are governed by rules set forth in our Civil Code. When the title does not specify the location of the servitude, the owner of the servient estate shall designate the location. La. C.C. art. 750. As the act of sale establishing Conti's servitude of access and passage is otherwise silent, the servitude's extent and location must be suitable for the kind of traffic or utility necessary for its reasonable use. *See* La. C.C. art. 705. Although Bienville may do nothing to diminish or make more inconvenient Conti's servitude, Conti must exercise its servitude in a way least inconvenient to Bienville. *See* La. C.C. arts. 743 and 748. This determination is an issue of fact. *See Toups v. Abshire*, 2007-1147, p. 3 (La.App. 3 Cir. 3/5/08), 979 So.2d 616, 618. Further, any doubt must be resolved in favor of Bienville.[6] *See* La. C.C. art. 730. Against this legal framework, we examine the evidence presented to the trial court.

Bienville's expert architect, John Williams (hereinafter "Mr. Williams") testified that the servitude area selected by Bienville was sufficient to grant Conti use of the servitude. Mr. Williams also testified to having experience working on at least five hundred projects in the French Quarter and that he is familiar with the unique constraints of designing parking for that area of the city. He conducted turning experiments by driving a Toyota 4Runner down the alley leading to Lot

---

[6] In support of its position, Bienville cites to *Palgrave v. Tallieu*, 508 So.2d 97 (La.App. 5th Cir. 1987) (hereinafter "*Palgrave I*"). In *Palgrave I*, the court held that the owners of the dominant estate were "entitled to a servitude sufficient to allow them to bring their boats in and out of Bayou Barataria." 508 So.2d at 100. This established a servitude of passage. However, after rendition of the opinion, the parties entered into a dispute as to the extent of the servitude necessitating the perfection of a subsequent consent judgment determining its location. *Palgrave v. Gros*, 2002-0249, pp. 2-3 (La.App. 5 Cir. 9/30/02), 829 So.2d 579, 581; *see also Claitor v. Brooks*, 2013-0178, pp. 12-13 (La.App. 1 Cir. 12/27/13), 137 So.3d 638, 647 (discussing the *Palgrave* cases). Similar to *Palgrave I*, *Conti II* established the servitude at issue to be a servitude of access and passage only. However, instead of perfecting a consent judgment, the dispute over the extent of the servitude between Conti and Bienville now manifests itself in the current appeal. The extent of the servitude had yet to be determined until the trial court's June 2019 judgment on Bienville's Motion to Designate Servitude.

AA. Mr. Williams opined that the servitude area designated by Bienville was sufficient to drive into, turn around, and exit Lot AA without having to back out of the alley. Mr. Williams accomplished this by making a gradual turn where a driver would turn slightly, reverse, repeat the process and exit. Mr. Williams acknowledged that while a thirty-foot truck would require greater space than that designated by Bienville, it would not be common for trucks of such size to enter interior lots in the French Quarter. He also stated that a smaller box truck, carrying an appliance, could make deliveries in the space designated. Vincent Marcello, Bienville's owner, testified that when one of his tenants operated a furniture store on his property, their twenty-six foot truck could load and unload on nearby Rampart Street rather than the interior lot. Conti submits that Mr. Williams' opinion is wholly unreliable because vehicles parked in specific locations interfere with Conti's ability to effectively turn around in or otherwise use Lot AA pursuant to its servitude. However, as argued by Bienville, the photographs referenced depict vehicles parked in common alleys in derogation of the law. *See Burgess-Blanchard v. Sciacca*, 2001-0891, pp. 8-10 (La.App. 4 Cir. 2/27/02), 819 So.2d 352, 356-57.

Conversely, Conti's expert architect, Dean Duplantier (hereinafter "Mr. Duplantier"), opined that the space designated by Bienville is insufficient for Conti to make use of its servitude even for vehicles such as small passenger vehicles and pickup trucks. He based his opinion on diagrams covering a wide range of vehicles up to a thirty-foot truck. The diagrams depicted turning radiuses pursuant to guidelines established by the American Association of State Highway Transportation Officials in contrast to the gradual turns performed by Mr. Williams. On cross-examination, Mr. Duplantier admitted that for larger vehicles

11

to make turns in accordance with his diagrams, many of Bienville's parked vehicles would have to be moved from the lot.

A trial court has broad discretion in determining the weight given to expert testimony including the discretion to substitute common sense and judgment when warranted by the record. *See 429 Bourbon Street, LLC v. RMDR Investments, Inc.*, 2016-0800, p. 15 (La.App. 4 Cir. 11/15/17), 230 So.3d 256, 266 (citations omitted). Where findings of fact are based on determinations regarding the credibility of expert witnesses, the manifest error standard requires appellate courts to give great deference to a trial court's findings. *See Bellard v. American Cent. Ins. Co.*, 2007-1335, p. 27 (La. 4/18/08), 980 So.2d 654, 672 (citing *Rosell*, 549 So.2d at 844). Thus, where a trial court's determination is based on its decision to credit one expert over another, such a finding can virtually never be manifestly erroneous. *Id*. (citing *Rosell*, 549 So.2d at 845). The trial court, in assessing the credibility of the experts, chose to accept the testimony of Mr. Williams over the testimony of Mr. Duplantier. Given the legal framework provided by our Civil Code for the interpretation of predial servitudes, the trial court was within its discretion in determining that the area depicted in the judgment was the most suitable for its use and least inconvenient to Bienville. *See* La. C.C. arts. 705, 730, 743, 748 and 750; *see also One River Place*, 609 So.2d at 948 (predial servitudes do not confer ownership interests). After reviewing the record and considering the applicable law, we find that the trial court did not err in granting Bienville's Motion to Designate Location of Servitude Area. Additionally, we find the trial court did not abuse its discretion in awarding the costs associated with the Motion to Designate Servitude to Bienville. *See Pelleteri v. Caspian Group Inc.*, 2002-

12

2141, p. 19 (La.App. 4 Cir. 7/2/03), 851 So.2d 1230, 1241 (citing La. R.S. 13:3666(B) and La. C.C.P. art. 1920).

**MOTION FOR LEAVE TO FILE PETITION FOR INTERVENTION**

Conti Holding argues that the trial court erred in denying its motion for leave to file a petition for intervention. Interventions by third persons in a pending action are governed by La. C.C.P. art. 1091. It is well settled by jurisprudence that the requirements for intervention are twofold: (1) the intervenor must have a justiciable interest in, and connexity to, the principal action, and (2) the interest must be so related or connected to the facts or object of the principal action that a judgment on the principal action will have a direct impact on the intervenor's rights. *In re Interdiction of Campbell*, 2001-0863, p. 4 (La.App. 5 Cir. 1/15/02), 807 So.2d 908, 910 (citation omitted). A justiciable interest is the right of a party to seek redress or a remedy against either the plaintiff or defendant in the original action or both, where those parties have a real interest in opposing it. *Id*. The right must be so related or connected to the facts or object of the principal action that a judgment on the principal action will have a direct impact on the intervenor's rights. *Id*., pp. 4-5, 807 So.2d at 910. Ownership of Lot AA is not a contested issue in this underlying suit, rather the issue pertains to the location of the servitude. Furthermore, Conti Holding has a separate suit currently pending against Bienville in Orleans Parish Civil District Court wherein it can protect its interest as to its claim of ownership. *See Suites at New Orleans, L.L.C. v. Lloyd's London*, 2009-0562, pp. 2-3 (La.App. 4 Cir. 5/27/09), 13 So.3d 241, 243 (quoting *Parish v. Holland*, 166 La. 24, 116 So. 580 (1928)). There is an insufficient connexity to justify the intervention. Accordingly, we find the trial court did not err in denying Conti Holding's motion for leave to file an intervention.

## <u>DECREE</u>

For the foregoing reasons, the June 27, 2019 judgments of the trial court are affirmed.

**AFFIRMED**